UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **MEGAN BARRETT, LINDSEY HOUSER, JENNIFER JONES, JENNIFER SEARD, KIMBERLY CLINTON, ERIN ECKENRODE, JULIE SMYTH, MARIE AVILA, ANDREA HARLEY, CHRISTY LOWDER,** and **TRACY LE, individually and on behalf of a class of similarly situated female employees,**<br><br>**Plaintiffs,**<br><br>**-- against --**<br><br>**FOREST LABORATORIES, INC. and FOREST PHARAMACEUTICALS, INC.**<br><br>**Defendants.** | Civil Action No. 12-CV-5224 (RA) (MHD) |

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT, IN PART, AND/OR TO STRIKE THE PUTATIVE CLASS DEFINITIONS**

---

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000
(212) 310-8007 (fax)

*Attorneys for Forest Laboratories, Inc. and Forest Pharmaceuticals, Inc.*

# TABLE OF CONTENTS

**Page**

Preliminary Statement ................................................................................................1

Background ................................................................................................................4

Argument ...................................................................................................................6

I.     Standard of Review ..........................................................................................6

II.    Plaintiffs' Equal Pay Act Claims (Count IV) Must Be Dismissed in Their Entirety .........7

    A.    The Standard for Stating an EPA Claim Is Rigorous ...............................7

    B.    Plaintiffs' Allegations Are Clearly Insufficient to Support Individual or Collective Action EPA Claims .........................................................9

        1.    Plaintiffs' EPA Claims Fail on an Individual Basis....................................9

        2.    Plaintiffs' EPA Collective Action Claim Also Fails as a Matter of Law .......................................................................................12

III.    Certain of Plaintiffs' Title VII Claims (Counts I-III) Must Be Dismissed ........................14

    A.    The Legal Framework for Title VII Class Claims ...................................14

        1.    Pattern-or-Practice Disparate Treatment Claims ...................................14

        2.    Disparate Impact Claims.........................................................16

    B.    Plaintiffs' Title VII Claims for Gender Based Pay Discrimination (Count I) Must Be Dismissed in Their Entirety.................................................18

        1.    Plaintiffs Fail to Allege Facts Showing a Pattern-or-Practice of Disparate Treatment of Women with Respect to Pay ...............................18

        2.    Plaintiffs Fail to Allege Facts Showing That Any Forest Policy Has a Disparate Impact on Women with Respect to Pay...................................21

    C.    Plaintiffs' Individual Pay Claims Also Fail ...........................................25

IV.    The Class and Individual Claims of Pregnancy Discrimination (Count III) Must Be Dismissed in Their Entirety...............................................................26

    A.    Plaintiffs Fail to Allege Any Facts Showing a Pattern-or-Practice of Discrimination Based on Pregnancy...................................................28

    B.    Plaintiffs Fail to Allege a Disparate Impact Claim Under the PDA ...................31

    C.    Plaintiffs' Individual Claims for Pregnancy Discrimination Also Fail ................32

        1.    Plaintiffs Barrett, Houser, and Smyth Fail to State Individual Claims for Pay Discrimination Under the PDA.........................................32

        2.    Forest's Alleged Denial of Extended Leave and/or Job-Share Positions to Accommodate Plaintiffs' Caregiver Status Is Simply Not Actionable Under the PDA ...............................................35

3. Plaintiffs Houser and Eckenrode Fail to State Claims for Promotion Discrimination Under the PDA................................................36

4. Plaintiff Harley Does Not Allege That She Suffered Any Adverse Action Because of Pregnancy ...................................................37

V. Plaintiffs' Title VII Class Promotions Discrimination Claim (Count II) Fails................39

VI. Plaintiffs' Title VII Class Definitions Must Be Stricken Under Rule 23(d)(1)(D) ..........40

 A. Standard ...........................................................................................................40

 B. The Title VII Class Definitions Must Exclude Individuals Whose Claims Are Outside the Statutory EEOC Charge Period .......................................41

VII. Certain of Plaintiffs' Individual Counts Fail as a Matter of Law and Must Be Dismissed ...................................................................................................................43

 A. Count VII Must Be Dismissed as Time-Barred and for Failure to Exhaust Administrative Remedies.................................................................................44

  1. Plaintiff Jones's Sexual Harassment Claim Is Time-Barred....................44

  2. Plaintiff Lowder's Sexual Harassment Claim Must Be Dismissed For Failure to Exhaust Administrative Remedies......................................46

 B. Plaintiffs Eckenrode's, Lowder's and Le's Retaliation Claims (Count VI) Must Be Dismissed ..................................................................................47

  1. Plaintiffs Eckenrode, Lowder and Le Have Not Exhausted Their Administrative Remedies.........................................................................47

  2. Even Assuming, *Arguendo*, That Plaintiff Eckenrode Had Exhausted, Her Retaliation Claim Still Fails ............................................48

Conclusion ...........................................................................................................................50

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdullajeva v. Club Quarters, Inc.*,
  1996 WL 497029 (S.D.N.Y. Sept. 3, 1996)................................................................9

*Adams v. N.Y. State Educ. Dep't*,
  752 F. Supp. 2d 420 (S.D.N.Y. 2010)....................................................46, 47, 48

*Adams v. Northstar Location Servs., LLC*,
  2010 WL 3911415 (W.D.N.Y. Oct. 5, 2010) ........................................................11

*Akinfaderin v. W.P. Carey & Co.*,
  2011 WL 6961403 (S.D.N.Y. Dec. 28, 2011) ....................................................8-9

*Alfano v. Costello*,
  294 F.3d 365 (2d Cir. 2002).................................................................................45

*Aliotta v. Bair*,
  614 F.3d 556 (D.C. Cir. 2010)..............................................................................25

*Ambrose v. Northstar Mem'l Grp., LLC*,
  2012 WL 3727156 (W.D. Tenn. Aug. 27, 2012)....................................................9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...............................................................................................6

*Avagliano v. Sumitomo Shoji Am., Inc.*,
  103 F.R.D. 562 (S.D.N.Y. 1984) ...................................................................41, 42

*Bass v. World Wrestling Fed'n Entm't, Inc.*,
  129 F. Supp. 2d 491 (E.D.N.Y. 2001) .................................................................10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)............................................................................................6, 7

*Benoit v. Ocwen Fin. Corp.*,
  960 F. Supp. 287 (S.D. Fla. 1997) ......................................................................16

*Black v. N.Y. Univ. Med. Ctr.*,
  1996 WL 280802 (S.D.N.Y. May 24, 1996) .........................................................9

*Blake v. Bronx Lebanon Hosp. Ctr.*,
  2003 WL 21910867 (S.D.N.Y. Aug. 11, 2003)................................................15

*Brennan v. City of White Plains*,
  1998 WL 75692 (S.D.N.Y. Feb. 20, 1998)...................................................19

*Briggs v. Women in Need, Inc.*,
  819 F. Supp. 2d 119 (E.D.N.Y. 2011) ..................................................23, 27

*Brown v. Coach Stores, Inc.*,
  163 F.3d 706 (2d Cir. 1998)..........................................................17, 36, 40

*Bryant v. Verizon Commc'ns, Inc.*,
  550 F. Supp. 2d 513 (S.D.N.Y. 2008).......................................................49

*Burlington N. & Santa Fe Ry. Co. v. White*,
  548 U.S. 53 (2006)..................................................................................50

*Byrnie v. Town of Cromwell Bd. of Educ.*,
  243 F.3d 93 (2d Cir. 2001).......................................................................17

*Calabro v. Westchester BMW, Inc.*,
  398 F. Supp. 2d 281 (S.D.N.Y. 2005).......................................................35

*Capruso v. Hartford Fin. Serv. Group, Inc.*,
  2003 WL 1872653 (S.D.N.Y. Apr. 10, 2003)..............................................25

*Chepak v. Metro. Hosp.*,
  2013 WL 1285270 (S.D.N.Y. Mar. 29, 2013) ...........................................12

*Coleman & Co. Sec., Inc. v. Giaquinto Family Trust*,
  236 F.Supp.2d 288 (S.D.N.Y. 2002)...........................................................4

*Collette v. St. Luke's Roosevelt Hosp.*,
  132 F. Supp. 2d 256 (S.D.N.Y. 2001)...........................................17, 18, 32

*Cooper v. Fed. Reserve Bank of Richmond*,
  467 U.S. 867 (1984)..........................................................................14, 15

*Costello v. N.Y. State Nurses Ass'n*,
  783 F. Supp. 2d 656 (S.D.N.Y. 2011).......................................................50

*Croom v. W. Connecticut State Univ.*,
  2002 WL 32503668 (D. Conn. Apr. 3, 2002).............................................40

*Cruse v. G&J USA Publ'g*,
  96 F. Supp. 2d 320 (S.D.N.Y. 2000).........................................................33

iv

*Cruz v. Coach Stores, Inc.*,
   202 F.3d 560 (2d Cir. 2000)..........................................................36, 40, 48

*Daniels v. United Parcel Serv., Inc.*,
   701 F.3d 620 (10th Cir. 2012) ...............................................................24

*Edwards v. Zenimax Media Inc.*,
   2012 WL 4378219 (D. Colo. Sept. 25, 2012) ...................................... 40-41

*EEOC v. Bass Pro Outdoor World, LLC*,
   2012 WL 1965685 (S.D. Tex. May 31, 2012) ........................................16

*EEOC v. Bloomberg L.P.*,
   2010 WL 3466370 (S.D.N.Y. Aug. 31, 2010) .......................................33

*EEOC v. Bloomberg L.P.*,
   778 F. Supp. 2d 458 (S.D.N.Y. 2011)..............................15, 27, 31, 33

*EEOC v. Hay Assocs.*,
   545 F. Supp. 1064 (E.D. Pa. 1982) .......................................................13

*EEOC v. JBS USA, LLC*,
   2011 WL 3471080 (D. Colo. Aug. 8, 2011) ...................................... 14-15

*EEOC v. Port Auth. of N.Y. & N.J.*,
   2012 WL 1758128 (S.D.N.Y. May 17, 2012) ....................................8, 9

*Emmons v. City Univ. of N.Y.*,
   715 F. Supp. 2d 394 (E.D.N.Y. 2010) ...............................................8, 10

*Enguita v. Neoplan USA Corp.*,
   390 F. Supp. 2d 616 (S.D. Tex. 2005) ..................................................44

*In re Family Dollar FLSA Litig.*,
   637 F.3d 508 (4th Cir. 2011) ...............................................................12

*Frasier v. Gen. Elec. Co.*,
   930 F.2d 1004 (2d Cir. 1991).................................................................9

*Gen. Tel. Co. v. Falcon*,
   457 U.S. 147 (1982)..............................................................................7

*Gibson v. Jacob K. Javits Convention Ctr. of N.Y.*,
   1998 WL 132796 (S.D.N.Y. Mar. 23, 1998) ....................................8, 11-12

*Gourdine v. Cabrini Med. Ctr.*,
   307 F.Supp.2d 587 (S.D.N.Y. 2004)......................................................49

*Hayden v. Paterson*,
   594 F.3d 150 (2d Cir. 2010)..................................................................6

*Hazen Paper Co. v. Biggins*,
   507 U.S. 604 (1993)..........................................................................16

*Hodczak v. Latrobe Specialty Steel Co.*,
   2009 WL 911311 (W.D. Pa. Mar. 31, 2009) ...............................7, 12, 16

*Int'l Union of Elec., Radio & Mach. Workers v. Westinghouse Elec. Corp.*,
   631 F.2d 1094 (3d Cir. 1980).............................................................13

*Johnson v. Univ. of Iowa*,
   431 F.3d 325 (8th Cir. 2005) .............................................................23

*Jones v. Casey's Gen. Stores*,
   538 F. Supp. 2d 1094 (S.D. Iowa 2008) .............................................12

*Jue v. Costco Wholesale Corp.*,
   2010 WL 889284 (N.D. Cal. Mar. 11, 2010)..........................................6

*Kasica v. U.S. Dep't of Homeland Sec., Citizenship & Immigration Servs.*,
   660 F. Supp. 2d 277 (D. Conn. 2009)...................................................6

*Krish v. Conn. Ear, Nose & Throat, Sinus & Allergy Specialists, P.C.*,
   607 F. Supp. 2d 324 (D. Conn. 2009)..................................................16

*Kulkarni v. City Univ. of N.Y.*,
   2002 WL 1315596 (S.D.N.Y. June 14, 2002) ......................................17

*Lee v. Overseas Shipholding Grp., Inc.*,
   2001 WL 849747 (S.D.N.Y. July 30, 2001)..........................................24

*Maganuco v. Leyden Cmty. High Sch. Dist. 212*,
   939 F.2d 440 (7th Cir. 1991) .......................................................26, 27

*Maldonado v. U.S. Bank*,
   186 F.3d 759 (7th Cir. 1999) .............................................................26

*Mandavia v. Columbia Univ.*,
   2012 WL 6186828 (S.D.N.Y. Dec. 12, 2012) ......................................48

*McNill v. N.Y.C. Dep't of Corr.*,
   950 F. Supp. 564 (S.D.N.Y. 1996).................................................27, 29

*Melford v. Pfizer Pharm., Inc.*,
   1999 WL 544726 (S.D.N.Y. July 26, 1999) .........................................36

*Mendelsohn v. Univ. Hosp.*,
178 F. Supp. 2d 323 (E.D.N.Y. 2002) ...................................................37

*Middleton v. City of Flint*,
92 F.3d 396 (6th Cir. 1996) .................................................15, 30

*Miller v. Kempthorne*,
357 F. App'x 384 (2d Cir. 2009) ...........................................24

*Milligan v. Citibank, N.A.*,
2001 WL 1135943 (S.D.N.Y. Sept. 26, 2001) ......................................11

*Mirasol v. Gutierrez*,
2006 WL 871028 (S.D.N.Y. Apr. 5, 2006) ...........................................16

*Mitchell v. Developers Diversified Reality Corp.*,
2010 WL 3855547 (E.D. Tex. Sept. 8, 2010) ........................................10

*Moawad v. Rx Place*,
1999 WL 342759 (E.D.N.Y. May 27, 1999) ..........................................27

*Morris v. Fordham Univ.*,
2004 WL 906248 (S.D.N.Y. Apr. 28, 2004) ..........................................8

*Munoz v. Orr*,
200 F.3d 291 (5th Cir. 2000) ..............................................18

*Nicholas v. CMRE Fin. Servs., Inc.*,
2009 WL 1652275 (D.N.J. June 11, 2009) .............................................6

*Noel v. Boeing Co.*,
622 F.3d 266 (3d Cir. 2010) ...............................................24

*O'Shea v. Littleton*,
414 U.S. 488 (1974) ....................................................26, 32, 40

*Patterson v. County of Oneida*,
375 F.3d 206 (2d Cir. 2004) ...............................................45

*Perry v. Ethan Allen, Inc.*,
115 F.3d 143 (2d Cir. 1997) ...............................................45

*Peterson v. Seagate US LLC*,
809 F. Supp. 2d 996 (D. Minn. 2011) ..................................................25

*Rhodes v. Cracker Barrel Old Country Store, Inc.*,
2002 WL 32058462 (N.D. Ga. Dec. 31, 2002) .......................................42

*Risco v. McHugh*,
  868 F. Supp. 2d 75 (S.D.N.Y. 2012)......................................................................49

*Robinson v. Metro-North Commuter R.R. Co.*,
  267 F.3d 147 (2d Cir. 2001)................................................................14, 15, 30

*Rodriguez v. Bear Stearns Cos., Inc.*,
  2008 WL 4831421 (D. Conn. Nov. 5, 2008) ...........................................................6

*Rodriguez v. Beechmont Bus Serv.*,
  173 F. Supp. 2d 139 (S.D.N.Y. 2001).....................................................................17

*Rogers v. Capital One Servs., LLC*,
  2011 WL 873312 (D. Conn. Feb. 19, 2011) ..........................................................40

*Rose v. Goldman, Sachs & Co.*,
  163 F. Supp. 2d 238 (S.D.N.Y. 2001).................................................................8, 10

*Rubinow v. Boehringer Ingelheim Pharm., Inc.*,
  2010 WL 1882320 (D. Conn. May 10, 2010)........................................................16

*Ryduchowski v. Port Auth. of N.Y. & N.J.*,
  203 F.3d 135 (2d Cir. 2000)...................................................................................7

*Schnellbaecher v. Baskin Clothing Co.*,
  887 F.2d 124 (7th Cir. 1989) ................................................................................13

*Schuler v. PriceWaterhouseCoopers, LLP*,
  595 F.3d 370 (D.C. Cir. 2010)..............................................................................24

*Sedotto v. Borg-Warner Protective Servs. Corp.*,
  94 F. Supp. 2d 251 (D. Conn. 2000).....................................................................10

*Seils v. Rochester City Sch. Dist.*,
  192 F. Supp. 2d 100 (W.D.N.Y. 2002) .................................................................15

*Smith v. City of Jackson*,
  544 U.S. 228 (2005)...............................................................................................17

*Snell v. Suffolk Cnty.*,
  782 F.2d 1094 (2d Cir. 1986).........................................................................46, 47

*Sotomayor v. City of New York*,
  862 F. Supp. 2d 226 (E.D.N.Y. 2012) ..................................................................38

*Todaro v. Siegel Fenchel & Peddy, P.C.*,
  2009 WL 3150408 (E.D.N.Y. Sept. 25, 2009) ...........................................7, 10, 13

*Tolliver v. Xerox Corp.*,
918 F.2d 1052 (2d Cir. 1990)..................................................................41, 42, 46

*Tompkins v. Allied Barton Sec. Servs.*,
2010 WL 3582627 (S.D.N.Y. Aug. 2, 2010) ........................................................13

*Trent v. Adria Labs., Inc.*,
1982 WL 374 (N.D. Ga. Feb. 4, 1982) .................................................................11

*Trezza v. Hartford, Inc.*,
1998 WL 912101 (S.D.N.Y. Dec. 30, 1998) .......................................................17

*Tucker v. Gonzales*,
2005 WL 2385844 (S.D.N.Y. Sept. 27, 2005).....................................................16

*Valentine v. Standard & Poor's*,
50 F. Supp. 2d 262 (S.D.N.Y. 1999).....................................................................38

*Vinson v. Seven Seventeen HB Phila. Corp.*,
2001 WL 1774073 (E.D. Pa. Oct. 31, 2001)........................................................42

*Vuong v. New York Life Ins. Co.*,
2009 WL 306391 (S.D.N.Y. Feb. 6, 2009)...........................................................43

*Wal-Mart Stores, Inc. v. Dukes*,
131 S.Ct. 2541 (2011) ...........................................................................................14

*Washington v. Garage Mgmt. Corp.*,
2012 WL 4336163 (S.D.N.Y. Sept. 20, 2012).......................................................5

*Waters v. Turner, Wood & Smith Ins. Agency, Inc.*,
874 F.2d 797 (11th Cir. 1989) (per curiam).........................................................13

*Wolman v. Catholic Health Sys. of Long Island, Inc.*,
2012 WL 566255 (E.D.N.Y. Feb. 16, 2012).........................................................12

*Workneh v. Pall Corp.*,
897 F. Supp. 2d 121 (E.D.N.Y. 2012) ..................................................................37

*Zhong v. August August Corp.*,
498 F. Supp. 2d 625 (S.D.N.Y. 2007)..............................................................12, 14

## Statutes

29 U.S.C. § 206(d)(1) ........................................................................................8, 10

29 U.S.C. § 216(b) ...................................................................................................7

42 U.S.C. § 2000e-2(a) ..........................................................................................24

42 U.S.C. § 2000e-5(e) .................................................................................................41, 44

42 U.S.C. § 2000e(k) ............................................................................................................26

**Rules**

Fed. R. Civ. P. 8(a) ...................................................................................................................6

Fed. R. Civ. P. 12(b)(6) ............................................................................................................6

Fed. R. Civ. P. 23 ....................................................................................................................40

**Other Authorities**

29 C.F.R. § 1620.9 ....................................................................................................................8

29 C.F.R. § 1620.13(e) .............................................................................................................8

29 C.F.R. § 1620.33(b) ...........................................................................................................11

EEOC Compl. Man. § 10–IV(E)(1) (2000) .............................................................................8

EEOC Compl. Man. § 10–IV(E)(2) (2000) .............................................................................8

Defendants Forest Pharmaceuticals, Inc. and Forest Laboratories, Inc. (collectively, "Defendants" or "Forest") respectfully submit this memorandum of law, the accompanying Declaration of Gary D. Friedman, dated April 29, 2013 (the "Friedman Decl."), and the exhibits attached thereto, in support of their motion, under Rules 12(b)(6) and 23(d)(1)(D) of the Federal Rules of Civil Procedure, to dismiss, in part, the Second Amended Class Action Complaint (the "SAC"), and/or to strike the putative class definitions.

## PRELIMINARY STATEMENT

In the SAC – Plaintiffs' <u>third</u> and, under the Court's February 25, 2013 Order, <u>final</u> attempt to state viable class and individual claims for gender and pregnancy discrimination against Forest – Plaintiffs attempt to cure the numerous deficiencies that Defendants identified in their prior correspondence and motion to dismiss the Amended Class Action Complaint ("AC"). However, Plaintiffs have made little more than superficial changes to their pleading without curing the fundamental defects in their claims.

Once again, all of Plaintiffs' class and collective action counts fail as a matter of law. First, Plaintiffs' individual and collective action pay discrimination claims under the Equal Pay Act (the "EPA") fail as a matter of law because the SAC, like its predecessor, fails to allege the <u>facts</u> necessary to satisfy the EPA's mandatory, rigorous pleading requirements. In response to Defendants' previous motion, Plaintiffs try to cure their defective EPA claims by identifying male employees who, "upon information and belief" (and erroneously as a matter of fact), allegedly were paid more than Plaintiffs. But such allegations are insufficient as a matter of law. And Plaintiffs do not even try to allege facts in support of their wholly conclusory allegations that they and their alleged male comparators performed "equal work on jobs" requiring "equal skill, effort, and responsibility, and which [were] performed under similar working conditions," which <u>alone</u> is fatal to their claims. In light of the SAC's failure to adequately allege that any

1

Plaintiff was paid less than any male employee for performing equal work, Plaintiffs' claim that they are subject to a "common plan or policy" of paying women less than men, as required to state a collective action claim under the EPA, is entirely weightless.

Unsurprisingly, given Plaintiffs' failure to adequately allege that they were paid less than any similarly situated male employees, Plaintiffs' Title VII class and individual claims for pay discrimination also fail as a matter of law.  Plaintiffs allege no facts to support their hypothesis that Forest has a companywide discriminatory policy with respect to pay, or even individual instances of Plaintiffs receiving lower pay because of their gender, let alone that Forest intentionally discriminates against women with respect to pay.

Likewise, Plaintiffs' superficial tweaks to their pregnancy discrimination allegations do not come close to curing the fatal flaws in their pleading.  Once again, Plaintiffs fail to allege any facts that would create even an inference that pregnancy discrimination is Forest's standard operating procedure or identify any policy or practice that adversely impacts pregnant women.  But more fundamentally, Plaintiffs' pregnancy discrimination claims continue to be based on the erroneous theory that the Pregnancy Discrimination Act encompasses caregiving roles.  It does not.  Putting aside that Plaintiffs conveniently ignore the numerous generous policies and practices that Forest maintains to accommodate pregnancy and caregivers, Plaintiffs' claims must be dismissed because they do not allege that they suffered any adverse employment actions because of pregnancy.

Further, Plaintiffs' pleading with respect to their Title VII promotions claims remains deficient.  To state a claim for promotions discrimination, the Second Circuit requires plaintiffs to allege the requirements and responsibilities of the position sought and how their own

background and employment skills fulfilled those requirements.  As in the AC, Plaintiffs do not even try to fulfill this mandatory pleading requirement.

In the alternative, Plaintiffs' class definitions remain grossly overbroad in temporal scope.  Plaintiffs persist in defining the classes as commencing in 2008, inexplicably ignoring Second Circuit law concerning who is eligible to participate in a putative class.  Plaintiffs should not be permitted to impose burdensome and costly class-wide discovery on Defendants with respect to claims that are time-barred as a matter of law.

Finally, several of Plaintiffs' individual counts must be dismissed as well, as they simply cannot plead viable Title VII claims.  The sexual harassment claims of Plaintiffs Jones and Lowder must be dismissed, as the former's claim is time-barred, while the latter's has not been administratively exhausted.  Plaintiff Eckenrode's retaliation claim suffers from numerous fatal deficiencies, including failure to exhaust administrative remedies, failure to allege an adverse employment action and failure to satisfy each of the pleading elements under Title VII.

Therefore, Defendants respectfully submit that the Court should: 1) dismiss in their entirety, with prejudice, the class and collective action claims in Counts I, II, III and IV of the SAC; 2) dismiss in its entirety, with prejudice, Count VII, concerning the two individual claims of sexual harassment by Plaintiffs Jones and Lowder; 3) dismiss in its entirety, with prejudice, Plaintiffs Eckenrode's, Le's, and Lowder's individual retaliation claims in Count VI; and, in the alternative, if the Court does not dismiss the Title VII Class Counts I, II and III, strike the class definitions as overbroad in temporal scope.

## BACKGROUND

Defendant Forest Laboratories, Inc. and its subsidiaries, develop, manufacture and sell pharmaceutical products that treat a variety of diseases and disorders.[1]  Forest Laboratories, Inc., together with its subsidiaries, operates in several countries around the world, including in every state in the United States, and employs approximately 5,700 employees globally.  Friedman Decl. Ex. A, p. 20.  Forest's U.S. sales forces are employed by Defendant Forest Pharmaceuticals, Inc., a wholly owned subsidiary of Forest Laboratories, Inc., which is responsible for the manufacture, sale, and distribution of Forest-branded pharmaceutical products in the United States.  SAC ¶ 23.  The U.S. sales forces consist of several thousand employees nationwide (*id.* ¶ 402), with various job titles and positions, involving different duties and responsibilities, who are compensated through base salaries and quarterly bonuses (commissions), to promote Forest's products to doctors and other medical care providers.  *See, e.g.*, *id.* ¶¶ 35, 170; *see also* Friedman Decl. Ex. A, p. 4.

Plaintiffs Megan Barrett, Lindsey Houser, Jennifer Jones, Jennifer Seard, Kimberly Clinton, Erin Eckenrode, Julie Smyth, Marie Avila, Andrea Harley, Christy Lowder, and Tracy Le are current or former sales employees at Forest who allege that Forest discriminated against them on the basis of their gender and/or pregnancy in violation of Title VII and the EPA.[2]  Plaintiffs not only assert individual claims for relief, but also purport to assert class claims for discrimination in pay and promotions on the basis of gender and/or pregnancy on behalf of a putative class of all female "Sales Representatives" employed by Forest since 2008.  *Id.* ¶ 402.  Yet, as is evident from even a cursory review, the SAC describes Plaintiffs' purely individual

---

[1] Friedman Decl. Ex. A (Forest Laboratories, Inc. Form 10-K, filed May 25, 2012), p. 4.  A court may take judicial notice of SEC filings, and may consider such filings in ruling on a motion to dismiss.  *See Coleman & Co. Sec., Inc. v. Giaquinto Family Trust*, 236 F.Supp.2d 288, 308-09 (S.D.N.Y. 2002) (Chin, J.).

[2] SAC ¶¶ 3, 25, 60, 104, 124, 153, 193, 224, 260, 291, 312, 347, 436-72.

grievances about their jobs, which Plaintiffs attempt to inflate into a putative class action.

Plaintiffs allege virtually no facts that are common even among each other, let alone among the

thousands of employees that comprise Forest's sales forces nationwide.  Accordingly, because it

would be unilluminating for the Court in the instant motion to review each of Plaintiffs'

individual grievances, Defendants do not attempt to summarize them here, but rather describe the

few facts relevant to each claim below.

        After their employment at Forest ended, each of Plaintiffs Barrett, Houser, Jones and

Seard filed separate and unrelated charges with the Equal Employment Opportunity Commission

(the "EEOC") alleging that Forest discriminated against them because of their gender in

violation of Title VII.  None of those charges resulted in an adverse finding by the EEOC.[3]  In

fact, there has been no adverse finding by any administrative agency vis-à-vis any Plaintiffs.

        Notwithstanding the absence of any adverse findings by the EEOC, on July 5, 2012,

Plaintiffs Barrett, Houser, Jones, and Seard filed a Class Action Complaint against Defendants.

But rather than serve Defendants with their complaint, four months later, on November 2, 2012,

Plaintiffs filed and served their AC.  The AC added six more current or former female sales

employees as Plaintiffs, none of whom had filed charges with the EEOC.  See AC ¶ 10.

        On February 4, 2013, just two days after Forest filed its Motion to Dismiss the Amended

Complaint (the "MTD AC"), Plaintiffs, recognizing the numerous deficiencies in their AC that

had been brought to the Court's attention through Defendants' papers,[4] sought to bolster their

pleading.  The Court granted Plaintiffs' application for a "final opportunity to amend to cure any

---

[3] See Friedman Decl. Exs. D, F, I, L.  Plaintiffs' EEOC charges are incorporated by reference into the SAC and may be considered by this Court in ruling on Defendants' motion to dismiss.  See Washington v. Garage Mgmt. Corp., 2012 WL 4336163, at *2 (S.D.N.Y. Sept. 20, 2012) (McMahon, J.).

[4] Defendants also had brought these deficiencies to Plaintiffs' counsels' attention, as required by the Court's Individual Rules of Practice, by letter well in advance of the filing of the motion.  Friedman Decl. Ex. M.

pleading deficiencies[,]" setting forth dates for the amended filing and briefing of Defendants' anticipated motion.[5]   On March 20, 2013, Plaintiffs served their SAC, adding one more female sales employee, Tracy Le, who also failed to file a charge with the EEOC.  *See* SAC ¶ 10.

## ARGUMENT

### I.      Standard of Review

Mere "labels and conclusions, or a formulaic recitation of the elements of a cause of action" will not suffice to survive a motion to dismiss under Rule 12(b)(6).  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Rather, under the Supreme Court's *Iqbal/Twombly* standard, "a complaint must contain *sufficient factual matter*, accepted as true, to 'state a claim to relief that is *plausible* on its face.'"  *Iqbal*, 556 U.S. at 678 (emphases added; quoting *Twombly*, 550 U.S. at 570).  Under *Iqbal*, all conclusory allegations must first be pared from the complaint, and then, the court must review the complaint's remaining allegations to determine whether the well-pleaded factual allegations "plausibly" (not merely conceivably) entitle the plaintiff to relief.  *Id.* at 678-79; *see also Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010).[6]

Plaintiffs are not excused from the *Iqbal/Twombly* pleading requirements simply because they purport to bring their case as a "class action."[7]  Indeed, the pleading standard for class

---

[5] Order, dated February 25, 2013 (Doc. No. 33) (clarifying Order, dated February 20, 2013 (Doc. No. 32)).

[6] In *Iqbal*, for example—a discrimination case—the Court dismissed a complaint that admittedly contained allegations "consistent with" discriminatory treatment.   The Court explained that, "given ... explanations" for defendants' actions that were "more likely" explanations than discriminatory intent, the complaint did not "plausibly establish [its] purpose" of showing an entitlement to relief.  *Iqbal*, 556 U.S. at 681.

[7] *See, e.g.*, *Jue v. Costco Wholesale Corp.*, 2010 WL 889284, at *6 (N.D. Cal. Mar. 11, 2010) (in the wake of *Twombly*, "[c]lass allegations must [be] supported by sufficient factual allegations demonstrating that the class device is appropriate and discovery on class certification is warranted"); *Nicholas v. CMRE Fin. Servs., Inc.*, 2009 WL 1652275, at *4 (D.N.J. June 11, 2009) ("After *Twombly*, courts … have found that class allegations must also comply with Rule 8(a) in order to proceed to class discovery."); *Kasica v. U.S. Dep't of Homeland Sec., Citizenship & Immigration Servs.*, 660 F. Supp. 2d 277, 282 (D. Conn. 2009) (dismissing  class claims under *Iqbal* "because [the] class-wide allegations lack any factual specificity"); *Rodriguez v. Bear Stearns Cos., Inc.*, 2008 WL 4831421, at *3-4 (D. Conn. Nov. 5, 2008) (dismissing class discrimination claims because plaintiffs failed to allege sufficient

claims is even <u>more</u> rigorous and requires plaintiffs to allege <u>more</u> facts than claims for individual relief.  *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 157-58 (1982) (recognizing the "wide gap" between the facts needed to establish an individual discrimination claim and those necessary to support a claim that an entire class of individuals has suffered similar discrimination).

## II.   Plaintiffs' Equal Pay Act Claims (Count IV) Must Be Dismissed in Their Entirety

In Count IV, Plaintiffs assert individual and collective action claims under the EPA under Section 216(b) of the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 216(b).  SAC ¶ 432.  But as noted in Defendants' original Motion to Dismiss the AC, Plaintiffs' EPA claims are pled as a mere afterthought to their Title VII claims,[8] and the SAC fails to cure the fundamental defects in the EPA claims.

### A.   The Standard for Stating an EPA Claim Is Rigorous

The scope of the EPA is "narrow[]."  *Todaro v. Siegel Fenchel & Peddy, P.C.*, 2009 WL 3150408, at *7 (E.D.N.Y. Sept. 25, 2009).  Congress enacted the EPA in 1963 as an amendment to the FLSA not to address discrimination or even gender discrimination generally, but "to legislate out of existence" one specific problem in the United States at that time; namely, the "long-held, but outmoded societal view that a man should be paid more than a woman for the same work."  *Ryduchowski v. Port Auth. of N.Y. & N.J.*, 203 F.3d 135, 142 (2d Cir. 2000) (citation omitted).  The EPA is drafted with precision to address just this issue.  It provides relief only if an employer pays employees of one sex "at a rate less than the rate at which [it] pays wages to *employees of the opposite sex* in [the same] *establishment* for *equal work* on jobs …

facts to render their class claims plausible); *Hodczak v. Latrobe Specialty Steel Co.*, 2009 WL 911311, at *9 (W.D. Pa. Mar. 31, 2009) (dismissing collective action pattern-or-practice claim under *Twombly* where only the named plaintiffs had pled a plausible claim).

[8] Notably, not a single Plaintiff who filed an EEOC charge alleged a violation of the EPA in her charge, despite being represented by counsel at the time.  *See* Friedman Decl. Exs. B, C, E, G, H, J, K.

[that] require[] *equal skill, effort, and responsibility*, and … are performed under *similar working conditions* ….” 29 U.S.C. § 206(d)(1) (emph. added).

In light of the statute's narrow scope, the requirements for pleading an EPA claim are precise and rigorous. *See, e.g.*, *EEOC v. Port Auth. of N.Y. & N.J.*, 2012 WL 1758128, at *3-4 (S.D.N.Y. May 17, 2012) (Buchwald, J.). Merely parroting the statutory language – as Plaintiffs do in the SAC – is patently insufficient. *See id.* at *4 (dismissing EPA claim because the allegations merely “track[ed] the language of the statute”). Rather, to survive a motion to dismiss, a plaintiff must plead <u>facts</u> that specifically support <u>each</u> of the EPA's elements:

1. that she and one or more specifically identified male employee(s)[9] in the same establishment (*i.e.*, the same physical location, not the “entire business or ‘enterprise’” (29 C.F.R. § 1620.9)) received unequal wages;

2. for work that (based on the “content of the jobs,” not merely the title or job code[10]) was equal in terms of skill, effort, and responsibility; and

3. performed under similar working conditions.

*See, e.g.*, *Emmons v. City Univ. of N.Y.*, 715 F. Supp. 2d 394, 413 (E.D.N.Y. 2010). EPA claims that lack the requisite factual support in the pleadings must be dismissed. *See, e.g.*, *Rose v. Goldman, Sachs & Co.*, 163 F. Supp. 2d 238, 243-44 (S.D.N.Y. 2001) (Swain, J.) (dismissing EPA claim on the pleadings because the plaintiff failed “to proffer factual support”); *Akinfaderin*

---

[9] *Morris v. Fordham Univ.*, 2004 WL 906248, at *4 (S.D.N.Y. Apr. 28, 2004) (Motley, J.) (dismissing EPA claim for failure to identify a comparator of the opposite gender because “[u]nder the plain language of the statute, and as interpreted by this Circuit, the identification of a comparator employed by the same employer and of the opposite gender is an indispensable requirement for a plaintiff bringing an Equal Pay Act Claim”); *Gibson v. Jacob K. Javits Convention Ctr. of N.Y.*, 1998 WL 132796, at *4 (S.D.N.Y. Mar. 23, 1998) (Preska, J.) (dismissing EPA claim despite “statistical allegations” that male employees were paid more than female employees because “the complaint fail[ed] to allege that any ‘specific’ males earned more than plaintiffs”) (citation omitted); *see also* EEOC Compl. Man. § 10–IV(E)(1) (2000) (“A complainant cannot compare herself or himself to a hypothetical male or female; rather, the complainant must show that a specific employee of the opposite sex earned higher compensation for a substantially equal job.”).

[10] *See, e.g.*, *Port Auth. of N.Y. & N.J.*, 2012 WL 1758128, at *3; EEOC Compl. Man. § 10–IV(E)(2) (2000) (“The important comparison in determining whether the ‘equal work’ requirement is met is the comparison of the jobs, not the people performing the jobs…. Job *content*, not job titles or classifications, determines the equality of jobs.”); 29 C.F.R. § 1620.13(e) (“Application of the equal pay standard is not dependent on job classifications or titles but depends rather on actual job requirements and performance…. Job titles are frequently of such a general nature as to provide very little guidance in determining the application of the equal pay standard.”).

*v. W.P. Carey & Co.*, 2011 WL 6961403, at *5 (S.D.N.Y. Dec. 28, 2011) (Sand, J.) (allegation of "unequal treatment" in the payment of bonuses is "simply too conclusory and factually deficient to survive dismissal").[11]

### B.    Plaintiffs' Allegations Are Clearly Insufficient to Support Individual or Collective Action EPA Claims

#### 1.    Plaintiffs' EPA Claims Fail on an Individual Basis

Even before reaching the question of whether the SAC includes sufficient facts to properly plead an EPA collective action claim[12] on behalf of a nationwide class of women, Plaintiffs' pleading fails because not one of the eleven Plaintiffs comes close to stating a claim on an individual basis under the standard articulated by courts in this Circuit. *See supra* pp. 7-9.

The EPA claims of Plaintiffs Barrett, Houser, Clinton, Eckenrode, Smyth, Avila, Harley, Lowder, and Le fail for the threshold reason that, as in the AC, these Plaintiffs fail to adequately allege any male comparators who were paid more than they were. Plaintiffs try to cure their failure in the AC (discussed in Defendants' prior motion to dismiss (*see* MTD AC at 13)) to identify any male comparators by listing the names of male employees and alleging, "upon

---

[11] *See also Frasier v. Gen. Elec. Co.*, 930 F.2d 1004, 1007-08 (2d Cir. 1991) (affirming "with no difficulty" dismissal of EPA claim because plaintiff's allegation that she "was not receiving equal pay for equal work" is "too conclusory to withstand a motion under Rule 12(b)(6)"); *Port Auth. of N.Y. & N.J.*, 2012 WL 1758128, at *4; *Black v. N.Y. Univ. Med. Ctr.*, 1996 WL 280802, at *1 (S.D.N.Y. May 24, 1996) (Sotomayor, J.) (same, where complaint contained only a general allegation that there was, on average, a gender-based pay disparity); *Abdullajeva v. Club Quarters, Inc.*, 1996 WL 497029, at *5 (S.D.N.Y. Sept. 3, 1996) (McKenna, J.) (dismissing EPA claim because complaint failed to "describe [the] jobs actually performed with sufficient detail to allow the Court to determine whether, as a matter of law, Plaintiffs may be able to establish that the jobs actually performed were substantially equal").

[12] This is, of course, an entirely separate and distinct issue from whether Plaintiffs can proceed, even conditionally, with their EPA claim on a collective action basis, which surely they cannot. *See Ambrose v. Northstar Mem'l Grp., LLC*, 2012 WL 3727156, at *3 (W.D. Tenn. Aug. 27, 2012) (in denying motion to dismiss FLSA collective action allegations, noting that while "a complaint alleging an FLSA collective action … is subject to pleading standards[,]" "the similarly situated conditional certification requirement is subject to evidentiary standards," and because "evidentiary standards are not to be confused with pleading requirements, … the Court will not confuse the evidentiary requirement of the similarly situated standard with the pleading requirements necessary to set forth a collective FLSA action in a complaint").

information and belief," that these male employees were paid more than Plaintiffs.[13]  Putting aside that Plaintiffs' speculative allegations are wrong as a matter of fact, Plaintiffs' meager attempt to cure their EPA allegations falls flat because they allege <u>no facts</u> in support of their "belief" that they were paid less than these male employees.  It is well-established that allegations on "information and belief" cannot constitute sufficient factual support for pleading an EPA claim as a matter of law, and courts within the Second Circuit routinely dismiss EPA claims based merely upon such allegations.[14]  This alone requires dismissal of the EPA claims of Plaintiffs Barrett, Houser, Clinton, Eckenrode, Smyth, Avila, Harley, Lowder, and Le.

Plaintiff Seard's EPA claim also fails for a threshold reason: she does not allege that she was paid less than any male employee.  She alleges that she received a lower "annual salary *increase* as compared to her male colleagues" (SAC ¶ 141) (emph. added), but does <u>not</u> allege that her salary was lower than any male employee's, before or after the salary increase.[15]

Plaintiff Jones is the only Plaintiff who alleges beyond mere "information and belief" that

---

[13] SAC ¶¶ 30, 63, 156, 198, 221, 228, 263, 293, 315, 349.

[14] *See Rose*, 163 F. Supp. 2d at 241-44 (dismissing EPA claim where plaintiff identified "male 'comparators'" but "provided no specific factual allegations to enable the Court to evaluate her information and belief assertions that male employees of Defendant performing 'substantially equal work' were treated preferentially"); *Bass v. World Wrestling Fed'n Entm't, Inc.*, 129 F. Supp. 2d 491, 593 (E.D.N.Y. 2001) (dismissing EPA claim where plaintiff "fail[ed] to elaborate facts supporting her 'information and belief'"); *Emmons*, 715 F. Supp. 2d at 414 (dismissing EPA claim because "Plaintiff's belief that her male colleagues were receiving more compensation than women in 2005 [was] not supported by any allegation other than her own speculation at that time").

[15] The EPA prohibits employers from discriminating "between employees on the basis of sex by paying *wages* to employees … at a rate less than the rate at which he pays wages to employees of the opposite sex …" 29 U.S.C. § 206(d)(1) (emph. added).  Merely receiving a lower percentage salary increase is not actionable under the EPA.  *See Sedotto v. Borg-Warner Protective Servs. Corp.*, 94 F. Supp. 2d 251, 267-68 (D. Conn. 2000) (allegation that male managers "received … more substantial salary increases" than plaintiff "do not meet the pleading requirements for stating a claim under the EPA" because "at the time of her increase, plaintiff was already making the same or more than half of the male managers in her Business Unit"); *Mitchell v. Developers Diversified Realty Corp.*, 2010 WL 3855547, at *5 (E.D. Tex. Sept. 8, 2010) *report and recommendation adopted*, 2010 WL 3860500 (E.D. Tex. Sept. 30, 2010) (rejecting EPA claim where plaintiff alleged that defendant "awarded two male employees higher percentage salary increases and bonuses than Plaintiff" because "the statute does not regulate raises or bonuses directly.  The statute merely requires that Plaintiff receive total compensation at least equal to male employees with equal performance.") (citing 29 U.S.C. § 206(d)(1) and 29 C.F.R. § 1620.10); *Todaro*, 2009 WL 3150408, at *7 (noting that the EPA does not prohibit "giv[ing] raises on the basis of sex").

she was paid less than a specific male employee.[16]  SAC ¶ 106.  But just as in the AC (*see* MTD

AC at 14), she still alleges <u>no facts</u> in support of any of the other elements of an EPA claim (*i.e.*,

that the employees performed equal work on jobs requiring equal skill, effort, and responsibility,

and that the jobs are performed under similar working conditions).[17]  This requires that her EPA

claim, like those of her co-Plaintiffs, be dismissed.  *See, e.g.*, *Adams v. Northstar Location*

*Servs., LLC*, 2010 WL 3911415, at *6 (W.D.N.Y. Oct. 5, 2010) (granting 12(b)(6) motion to

dismiss EPA claim because while the plaintiff "sufficiently established the first prong of the pay

discrimination analysis" by identifying a specific male employee who was paid more than she

was, she failed to "describe her job responsibilities in comparison to the job responsibilities of

the male [employee]" or "allege[] [any] facts which show that she and the male [employee]

performed substantially equal work") (internal quotation marks and citations omitted).[18]

---

[16] Even Plaintiff Jones's attempt to plead this first element of an EPA claim fails.  The applicable statute of limitations for this EPA claim is two years (as the SAC includes no allegations sufficient to warrant the application of the EPA's three-year limitations period for willful violations).  29 C.F.R. § 1620.33(b).  The only alleged pay disparity for which Plaintiff Jones provides any factual support – her starting base salary in January 2008 (*see* SAC ¶¶ 104, 106) – is therefore untimely.  She attempts to revive her untimely claim by alleging that the pay disparity from January 2008 "continued … throughout her tenure at Forest" because "Forest determines merit increases as a percentage of base salary[.]"  *Id.* ¶ 107.  But the notion that all Forest sales representatives presumptively receive the same percentage salary increase as each other is antithetical to the very concept of a <u>merit</u>-based increase, and indeed, Plaintiffs' own allegations show that the annual merit increases are <u>not</u> determined as uniform percentages, but can vary greatly from representative-to-representative and from year-to-year.  *See, e.g.*, *id.* ¶¶ 38, 88, 95, 252-53.  Therefore, the SAC contains no basis on which this Court could reasonably infer that Plaintiff Jones's alleged pay disparity from January 2008 vis-à-vis her male comparator continued throughout her tenure at Forest.  Likewise, the starting salary disparities vis-à-vis male comparators alleged by Plaintiffs Houser, Eckenrode and Smyth, which fail in the first instance because they are alleged only upon "information and belief," also fail for the additional reason that they are untimely.  *See id.* ¶ 63 (Houser – 2003); ¶¶ 193, 198 (Eckenrode – 2003); ¶¶ 225, 228 (Smyth – 2005).

[17] Plaintiff Jones makes only the conclusory allegation, with no supporting facts, that she and her male comparator held "jobs [that] required the same skills, efforts, and responsibilities, and they worked under similar conditions." SAC ¶ 106.  Notably, Plaintiff Jones alleges that she and her male comparator had merely "*comparable*" (but not the same) "work experience in the sales industry."  *Id.* (emphases added).  This distinction is significant because "[i]t is not a violation of the Equal Pay Act to base a higher salary on an employee's prior experience."  *Trent v. Adria Labs., Inc.*, 1982 WL 374, at *10 (N.D. Ga. Feb. 4, 1982) (holding that there was no EPA violation when a male pharmaceutical sales representative received a higher salary than his female counterpart based on his seven years of experience in pharmaceutical sales); *see also Milligan v. Citibank, N.A.*, 2001 WL 1135943, at *9 (S.D.N.Y. Sept. 26, 2001) (Schwartz, J.) ("[Prior] experience is a factor other than sex and is a lawful reason for paying disparate wages.").

[18] *See also Gibson*, 1998 WL 132796, at *3 (granting 12(b)(6) motion to dismiss EPA claims because while the plaintiffs alleged unequal pay compared to a male employee, they failed to "allege that [the employees] performed

11

### 2.    Plaintiffs' EPA Collective Action Claim Also Fails as a Matter of Law

Because each Plaintiff's individual EPA claim fails, the EPA collective action claim must be dismissed because an FLSA collective action cannot proceed without a lead plaintiff.[19]  But even assuming, *arguendo*, that one or more of Plaintiffs' EPA claims were allowed to proceed, the EPA collective action claim still fails because the bar for stating a collective action claim is considerably higher than that for an individual claim.  Even where an individual claim has been sufficiently pled, to adequately allege a § 216(b) collective action claim, "plaintiffs must, at least, provide a modest *factual* showing sufficient to demonstrate that they and potential plaintiffs … were victims of a *common policy or plan* that violated the law."  *Zhong v. August August Corp.*, 498 F. Supp. 2d 625, 630 (S.D.N.Y. 2007) (Marrero, J.) (emph. added) (citations and internal quotation marks omitted).[20]  Plaintiffs fail to satisfy this higher threshold for proceeding on a collective basis because the SAC alleges <u>no</u> <u>facts</u> demonstrating that members of the putative Collective Action Class were victims of any common policy or plan that violated the EPA.

Plaintiffs assert in the SAC, just as they did in the AC (*see* MTD AC at 15-16), that they "are subject to Defendants' common policy and practice of gender discrimination in ... failing to compensate female employees on par with male employees who perform substantially equal

---

substantially equal work"); *Chepak v. Metro. Hosp.*, 2013 WL 1285270, at *3 (S.D.N.Y. Mar. 29, 2013) (Griesa, J.) (granting 12(b)(6) motion to dismiss EPA claim where plaintiff alleged that male comparators earned $10 more per hour, thereby satisfying the first element of an EPA claim, but did not allege facts to show that they performed equal work).

[19] *See In re Family Dollar FLSA Litig.*, 637 F.3d 508, 519 (4th Cir. 2011) ("Without a viable [FLSA] claim, [a plaintiff] cannot represent others whom she allege[s] were similarly situated."); *Wolman v. Catholic Health Sys. of Long Island, Inc.*, 2012 WL 566255, at *9 (E.D.N.Y. Feb. 16, 2012) ("[T]o survive a motion to dismiss, Plaintiffs must allege facts showing that each Lead Plaintiff was personally denied overtime by Defendants ... Pleading facts that show that Defendants utilize a policy that violates the FLSA without showing that the Lead Plaintiffs were injured by that policy will not defeat a motion to dismiss.") (citations omitted), *aff'd in part, rev'd in part on other grounds sub nom. Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106 (2d Cir. 2013).

[20] *See also Hodczak*, 2009 WL 911311, at *9 (dismissing collective action claim for failure to allege "facts" demonstrating that "plaintiffs' firings are part of a systematic pattern or practice of terminating older employees"); *Jones v. Casey's Gen. Stores*, 538 F. Supp. 2d 1094, 1102-03 (S.D. Iowa 2008) (dismissing collective action claim for failure to include "*factual* allegation[s] that would permit an inference that even one member of the Plaintiffs' collective has 'a right to relief above the speculative level'") (quoting *Twombly*, 550 U.S. at 555).

work and/or hold equivalent levels and positions ....”  SAC ¶ 435.  But this is no more than a paraphrasing of the statutory language, which is insufficient to state a claim as a matter of law. *See, supra* p. 8.  Plaintiffs also continue to allege that they “are subject to Defendants’ common policy and practice of gender discrimination in ... failing to provide female employees with job classifications, grades and titles commensurate with male employees ...; hiring and assigning female employees into lower-level positions ...; and ... failing to provide female employees equal pay by denying opportunities for promotion and advancement ....”  SAC ¶ 435.  Not only are these allegations conclusory, but all of these alleged (and unspecified) discriminatory policies are premised on alleged failures to <u>hire</u> or <u>promote</u>, which are outside the scope of the EPA.[21]

The only new allegation in the SAC of a purported common policy or plan of pay discrimination is Plaintiffs’ assertion that “the manner in which Forest management determines the base salary to be paid to employees, including the criteria considered and weighted, disproportionately adversely affects and has a disparate impact upon women.”  SAC ¶ 377.  But this class-wide allegation, just like Plaintiffs’ individual allegations of starting salary disparities, is made only “[o]n information and belief,” with no factual allegations to support its existence. *Id.*  Plaintiffs do not even attempt to describe the “manner” in which Forest sets starting salaries, nor do they identify the “criteria” used in this process.  *See id.*  As described above, of the eleven

---

[21] *See Tompkins v. Allied Barton Sec. Servs.*, 2010 WL 3582627, at *11-12 (S.D.N.Y. Aug. 2, 2010) (Cott, Mag. J.), *report and recommendation adopted by*, 2010 WL 3582621 (S.D.N.Y. Sep 13, 2010) (Berman, J.), *aff'd*, 424 F. App’x 42 (2d Cir. 2011) (holding that the EPA “does not recognize” a claim where all employees in the same job category are compensated equally, but more men than women are in the higher paying job category); *Todaro*, 2009 WL 3150408, at *7 (“nothing in the [EPA] prevents an employer from failing to hire or promote or, to some extent, even give raises on the basis of sex”); *Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 130 (7th Cir. 1989) (discrimination in promotions is “beyond the scope of the Equal Pay Act”); *Int’l Union of Elec., Radio & Mach. Workers v. Westinghouse Elec. Corp.*, 631 F.2d 1094, 1103 (3d Cir. 1980) (discriminatory promotions, transfers and hiring are not barred by, or actionable under, the EPA); *Waters v. Turner, Wood & Smith Ins. Agency, Inc.*, 874 F.2d 797, 800-01 (11th Cir. 1989) (per curiam) (the EPA does not recognize claims for an employer’s refusal to allow women the opportunity to earn equal pay by performing the same jobs as men); *EEOC v. Hay Assocs.*, 545 F. Supp. 1064, 1083 n.22 (E.D. Pa. 1982) (noting that discrimination in the areas of responsibility and promotion is not cognizable under the EPA).

Plaintiffs, only Plaintiff Jones alleges beyond mere "information and belief" that her starting salary was lower than a male comparator's, and even she fails to allege that she and her male comparator performed equal work on jobs requiring equal responsibility and performed under similar working conditions.  This one Plaintiff's allegation of a salary disparity, which does not even sufficiently allege an actionable EPA claim even on an individual basis, plainly cannot satisfy the requirement of a "modest factual showing" that Forest's female sales representatives are "victims of a common policy or plan that violate[s] the law[,]" and cannot, therefore, substantiate Plaintiffs' collective action claim.  *Zhong*, 498 F. Supp. 2d at 630 (citation omitted).

## III.   Certain of Plaintiffs' Title VII Claims (Counts I-III) Must Be Dismissed[22]

### A.   The Legal Framework for Title VII Class Claims

#### 1.   Pattern-or-Practice Disparate Treatment Claims

Plaintiffs asserting a class claim for disparate treatment based on a "pattern-or-practice" of discrimination must satisfy an extraordinarily high standard mandated by the Supreme Court; namely, that <u>intentional</u> discriminatory practices are the employer's "standard operating procedure," not merely sporadic or isolated occurrences.  *Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 875-76 (1984) (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336, 358-60 (1977)); *see also Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 158 (2d Cir. 2001).

"'Pattern-or-practice cases differ significantly from the far more common cases involving one or more claims of individualized discrimination,'" and have far different standards of

---

[22] Defendants are moving to dismiss Plaintiffs' Title VII class claims, Counts I-III, pursuant to Rule 12(b)(6).  Although Plaintiffs' class claims as pled could never satisfy all the rigorous requirements for certification as set forth in the Supreme Court's seminal decision in *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011), and the lower court decisions applying *Dukes*, Defendants are not moving to strike the SAC's Title VII class claims on that basis at this time.  Therefore, the Court need not address or comment on any Rule 23 issues, such as commonality or predominance, in considering the instant motion.

pleading and proof.  *EEOC v. JBS USA, LLC*, 2011 WL 3471080, at *2 (D. Colo. Aug. 8, 2011)

(citations omitted).  Whereas a plaintiff may prove an individual claim under Title VII based on

a single instance of disparate treatment, isolated acts of discrimination are insufficient to

demonstrate the existence of a company-wide discriminatory pattern.  *See Cooper*, 467 U.S. at

875-76 (explaining that the "crucial difference" between individual and pattern-or-practice

discrimination is that the inquiry in a pattern-or-practice claim is not on individual employment

decisions, but on "a pattern of discriminatory decisionmaking"); *EEOC v. Bloomberg L.P.*, 778

F. Supp. 2d 458, 468 (S.D.N.Y. 2011) (Preska, J.) (pattern-or-practice claims differ from

individual claims "because the Supreme Court has cautioned that isolated or individual instances

of discrimination, even if true, should not be construed to turn every Title VII case in[to] 'a

potential companywide class action'") (quoting *Falcon*, 457 U.S. at 159)).[23]  Thus, to establish a

pattern-or-practice claim, a plaintiff typically must present both "*strong* statistical evidence" and

a substantial number of individual cases of discrimination causally related to the alleged pattern-

or-practice.  *Middleton v. City of Flint*, 92 F.3d 396, 405 (6th Cir. 1996) (citation omitted)

(emphasis in original).[24]

     Importantly, plaintiffs asserting pattern-or-practice claims are not relieved of these

stringent requirements at the pleadings stage.  It is not enough for a plaintiff to simply "invok[e]

the magic words 'pattern' or 'practice'" in the complaint.  *Blake v. Bronx Lebanon Hosp. Ctr.*,

2003 WL 21910867, at *5 (S.D.N.Y. Aug. 11, 2003) (Motley, J.).  Rather, to survive a motion to

dismiss, a plaintiff must allege "*facts* to support the conclusion that intentional discrimination

---

[23] *See also Seils v. Rochester City Sch. Dist.*, 192 F. Supp. 2d 100, 118-19 (W.D.N.Y. 2002), *aff'd* 99 F. App'x 350 (2d Cir. 2004) ("Given the need to prove such pervasive, systematic discrimination, the standard of proof for a pattern or practice claim is higher than for a … disparate treatment claim.").

[24] *See also Robinson*, 267 F.3d at 158 n.5 (explaining that statistics are of particular import in class cases because it is "[t]he heavy reliance on statistical evidence in a pattern-or-practice disparate treatment claim [that] distinguishes such a claim from an individual disparate treatment claim").

was the defendant's standard operating procedure." *Mirasol v. Gutierrez*, 2006 WL 871028, at

*5 (S.D.N.Y. Apr. 5, 2006) (Chin, J.) (emph. added) (citation and internal quotation marks

omitted); *see also Benoit v. Ocwen Fin. Corp.*, 960 F. Supp. 287, 289 (S.D. Fla. 1997) (holding

that "broad, vague, and conclusory statements that a 'pattern and practice' of discrimination

exists" are insufficient to survive a motion to dismiss), *aff'd*, 162 F.3d 1177 (11th Cir. 1998).

This requires pleading that the employer adopted "a formal policy" of explicit discrimination or

sufficient statistics and evidence to render plausible the claim that alleged examples of disparate

treatment are part of a companywide pattern that is so pervasive as to constitute a "standard

operating procedure."  Disparate treatment pattern-or-practice claims that fail to meet these

requirements must be dismissed on the pleadings.[25]

## 2.    Disparate Impact Claims

Disparate impact claims under Title VII challenge "employment practices that are

facially neutral in their treatment of different groups but that in fact fall more harshly on one

group than another and cannot be justified by business necessity." *Hazen Paper Co. v. Biggins*,

507 U.S. 604, 609 (1993).  To state a *prima facie* case of disparate impact, a plaintiff must

allege: (1) a specific and clearly delineated policy, (2) a significant disparate impact on a

protected class, and (3) facts demonstrating a causal connection between the specific challenged

---

[25] *See, e.g., Tucker v. Gonzales*, 2005 WL 2385844, at *4-5 n.3 (S.D.N.Y. Sept. 27, 2005) (Swain, J.) (dismissing plaintiffs' pattern-or-practice claim because plaintiffs failed to "allege[] … facts whatsoever that would support a claim of a widespread pattern or practice of discrimination"); *EEOC v. Bass Pro Outdoor World, LLC*, 2012 WL 1965685, at *14 (S.D. Tex. May 31, 2012) (dismissing pattern-or-practice claim because allegations that out of 600 managers, only 10-15 were Black and "a handful of racist incidents, however disturbing," failed "to render the EEOC's allegations of a *company-wide* pattern or practice plausible") (emphasis in original); *Krish v. Conn. Ear, Nose & Throat, Sinus & Allergy Specialists, P.C.*, 607 F. Supp. 2d 324, 332 (D. Conn. 2009) (dismissing claim because "allegations of systematic firing, even supported by allegations of three confirmatory instances, without more, does not render plausible plaintiffs' allegations of a pattern or practice claim"); *Rubinow v. Boehringer Ingelheim Pharm., Inc.*, 2010 WL 1882320, at *4 (D. Conn. May 10, 2010) (allegations regarding plaintiff and six other employees "insufficient to state a pattern and practice claim"); *Hodczak*, 2009 WL 911311, at *9 (dismissing collective action pattern-or-practice claim under the Age Discrimination in Employment Act because the plaintiffs failed to allege facts supporting their assertion that their  "firings [were] part of a systematic pattern and practice of terminating older employees").

policy and the alleged disparate impact.  *See Collette v. St. Luke's Roosevelt Hosp.*, 132 F. Supp. 2d 256, 276 (S.D.N.Y. 2001) (Lynch, J.) (citing *Smith v. Xerox Corp.*, 196 F.3d 358, 364 (2d Cir. 1999)); *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 712 (2d Cir. 1998)).

To adequately allege a disparate impact, "it is not enough to simply … point to a generalized policy that leads to such an impact.  Rather, the employee is responsible for isolating and identifying the *specific* employment practices that are allegedly responsible for any observed statistical disparities."  *Smith v. City of Jackson*, 544 U.S. 228, 241 (2005) (internal quotation marks and citation omitted).[26]  Even when a plaintiff has identified a specific employment policy, a disparate impact claim must be dismissed if the plaintiff fails to allege <u>significant</u> adverse effects on the protected group and facts, particularly <u>statistical</u> evidence, establishing a <u>causal</u> <u>connection</u> between the policy and the alleged disparity.  *See Brown*, 163 F.3d at 712-13 (affirming Rule 12(b)(6) dismissal with prejudice because while the plaintiff alleged "general statistics" about the proportion of minority employees at Coach headquarters and in management, even at the pleadings stage, "[a]llegations which contend only that there is a bottom line racial imbalance in the work force are insufficient" to establish causation); *Trezza v. Hartford, Inc.*, 1998 WL 912101, at *7-8 (S.D.N.Y. Dec. 30, 1998) (Mukasey, J.) (dismissing disparate impact claim premised on a test required for candidates seeking promotion to managing attorney positions because the plaintiff alleged no facts about the mix of the relevant labor pool, the pool of otherwise-qualified candidates, or that female candidates performed more poorly on the test); *Beechmont*, 173 F. Supp. 2d at 147-48 (dismissing disparate impact claim because the

---

[26] *See also Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 111 (2d Cir. 2001) ("[s]imply gesturing towards the hiring process as a whole will not" suffice); *Kulkarni v. City Univ. of N.Y.*, 2002 WL 1315596, at *2 (S.D.N.Y. June 14, 2002) (Cote, J.) (dismissing disparate impact claim for failure to sufficiently identify the policy, and stating that an asserted need for discovery "does not … relieve plaintiff of the obligation to identify in his pleadings a specific employment practice that is the cause of the disparate impact"); *Rodriguez v. Beechmont Bus Serv.*, 173 F. Supp. 2d 139, 147-148 (S.D.N.Y. 2001) (Connor, J.) (same).

plaintiff alleged "no statistical evidence to suggest that any such neutral policy or factor had a significant adverse impact").[27]  As with pattern-or-practice disparate treatment cases, mere anecdotal support, without more, is insufficient for a disparate impact claim, even at the pleadings stage.[28]

### B.   Plaintiffs' Title VII Claims for Gender Based Pay Discrimination (Count I) Must Be Dismissed in Their Entirety

In Count I, Plaintiffs assert a class claim for pay discrimination on the grounds that Forest allegedly subjects female sales representatives to "discriminatory compensation in base salary, annual merit increases, compensation accompanying awards, bonuses and stock options, promotions and other differential treatment on the basis of their gender affecting their compensation, in violation of Title VII." SAC ¶ 438.  But Plaintiffs' pleading fails to allege the facts necessary to support a Title VII pay discrimination claim, under either a disparate treatment or a disparate impact theory.

### 1.   Plaintiffs Fail to Allege Facts Showing a Pattern-or-Practice of Disparate Treatment of Women with Respect to Pay

According to Plaintiffs, Forest engages in two facially discriminatory practices that result in reduced pay for female sales representatives.  But the factual allegations in the SAC do not establish that either one of these alleged practices is actually the "standard operating procedure" at Forest.  The failure to adequately allege a <u>standard</u> <u>operating</u> <u>procedure</u> at Forest of

---

[27] *See also Munoz v. Orr*, 200 F.3d 291, 300 (5th Cir. 2000) ("Disparate impact claims may be brought by either individual plaintiffs or a class.  In either case, the evidence will focus on the degree of statistical disparity between protected and non-protected workers in regards to employment or promotion.").

[28] *See Collette*, 132 F. Supp. 2d at 277 (granting 12(b)(6) motion to dismiss Title VII disparate impact claim, explaining, "[i]t is difficult to see how one alleged instance of the defendant's failure to post a job … is sufficient to plead an actionable employment practice or policy which limits the job opportunities of historically disfavored groups").

intentional[29] discrimination – the lynchpin of a Title VII "pattern-or-practice" claim – is fatal to Plaintiffs' class-wide disparate treatment claim under Count I.

Plaintiffs assert that "Forest's predominantly male managers disproportionately rate women lower than men on [their] performance assessments," resulting in "relatively lower annual merit increases for women." SAC ¶ 378. But the factual allegations in the SAC cannot establish that Forest's "standard operating procedure" is to intentionally reduce female sales representatives' merit-based salary increases by giving them lower performance scores than males. Plaintiffs proffer no statistics whatsoever in support of this nationwide class claim of pay discrimination. The only allegation in the SAC that even attempts to offer statistical support is the assertion that more men than women have held management positions in a few of Plaintiffs' own territories,[30] a vague and narrow allegation concerning the composition of management at Forest by gender. And rather than alleging any facts to show that Forest actually engages in the practice of intentionally causing women to receive smaller salary increases by giving them unjustifiably low performance scores, the SAC merely has a few scattered anecdotes of female sales representatives receiving low performance scores, in some instances without even an alleged connection to a reduced merit-based salary increase,[31] and in all instances without any

---

[29] To state a claim for pay discrimination under Title VII under a disparate treatment theory, plaintiffs must allege "an intent to discriminate and the intent must encompass an actual desire to pay women less than men *because* they are women." *Brennan v. City of White Plains*, 1998 WL 75692, at *9 (S.D.N.Y. Feb. 20, 1998) (Sweet, J.) (citation omitted) (emph. added).

[30] *See, e.g.* SAC ¶¶ 25, 46 (Scranton, Pennsylvania), *id.* ¶¶ 312, 324 (Champaign/Springfield, Illinois), and *id.* ¶¶ 260, 290 (South Bay, Los Angeles).

[31] Plaintiffs Jones, Clinton, Eckenrode, Harley, Lowder and Le do not even attempt to allege that they were victimized under this alleged practice. Plaintiff Barrett alleges that she received low performance scores after her return from maternity leave (SAC ¶ 41), and Plaintiff Avila alleges that she received low performance scores after requesting a job share (*id.* ¶ 269), but neither one alleges that her scores resulted in a relatively lower salary increase. Plaintiff Smyth alleges that she received smaller salary increases after returning from maternity leaves in January 2010 and April 2011 than she had received in previous years (*id.* ¶¶ 252-55), but she does not allege that this was the result of any unjustifiably low performance scores.

support for the notion of intentional discrimination <u>on account of gender</u>.[32]  No Plaintiff alleges any facts that would allow this Court to reasonably infer that she received a reduced salary increase because of any <u>intentional</u>, discriminatory animus by Forest management towards <u>women</u> (as opposed to, for example, her performance on the job, the global economic recession, the Company's financial results, the prospects for the coming year, or any number of other possible reasons other than intentional discrimination towards women).  With no statistics lending any support to their claim, and with no Plaintiff alleging any facts to show that she was victimized by this alleged practice of intentional gender-based pay discrimination, Plaintiffs have failed to adequately allege that it is Forest's "standard operating procedure" to give women relatively lower salary increases on the basis of unjustifiably low performance scores.[33]

Plaintiffs also allege that "Forest's policies and practices that place employees on probation or extend probation on the basis of manager-supplied performance assessments and then disqualify employees on probation from receiving awards are administered in a manner that results in women receiving disproportionately fewer awards and accompanying compensation than their objective sales performance would merit."  SAC ¶ 382.  This allegation fails to support a disparate treatment claim under Count I for at least three reasons.[34]  First, as discussed above,

---

[32] Plaintiff Houser asserts that she received low scores only upon her November 2009 return from maternity leave (SAC ¶¶ 80, 94), and Plaintiff Seard contends that she received low scores only after she requested a job share in February 2010 (*id.* ¶¶ 133, 137).

[33] Plaintiffs also assert two variations of the purported practice described in SAC ¶ 378, alleging that Forest has a "practice" of "lowering the performance reviews of women" (1) "after their return from maternity leave" (*id.* ¶ 379) or (2) after they "inquire about or seek to participate in the job-sharing program" (*id.* ¶ 380), thereby reducing their annual merit increases.  By definition, neither of these alleged practices could support a class claim under Count I, because the alleged practices relate only to subsets of female sales representatives, yet Count I is brought on behalf of a putative class of <u>all</u> female sales representatives.  Regardless, Plaintiffs have not shown that either of these alleged practices are "standard operating procedure" at Forest, for the same reasons discussed herein with respect to the overarching allegation in ¶ 378 of lowered performance scores resulting in lower salary increases for women.

[34] Beyond the disparate treatment component of the alleged policy in SAC ¶ 382, Plaintiffs also allege that "the inclusion or weight given by Forest policy to manager-supplied performance assessments in comparison to objective sales performance has a disparate impact on women[.]"  *Id.*  However, for the same reasons that the disparate

Plaintiffs have not alleged <u>facts</u> sufficient to show that intentionally reducing female sales representatives' pay by giving them low performance scores is Forest's "standard operating procedure."  Second, this alleged practice simply cannot support a Title VII pay claim because <u>not one</u> of the Plaintiffs' factual allegations connects awards to any actual compensation; indeed, the lack of any alleged connection between awards and compensation is made clear by Plaintiff Clinton, who says that she was passed over for a "Representative of the Quarter" award even though she had received "the top pay-out" for that quarter.  *Id.* ¶ 170.  Therefore, even if Plaintiffs had adequately pled that Forest intentionally gives women fewer awards (which they have not), such allegations still could not state a claim under Count I.  Third, the alleged existence of this practice is belied by Plaintiffs' own allegations, which show that they have actually, by their own account, received <u>numerous</u> awards throughout their years at Forest, refuting the notion that Forest has a practice of depriving female sales representatives of awards that they have earned on the merits of their performance.[35]

### 2.   Plaintiffs Fail to Allege Facts Showing That Any Forest Policy Has a Disparate Impact on Women with Respect to Pay

Plaintiffs allege the existence of certain facially neutral policies at Forest that purportedly cause a disparate impact on women's pay.  However, Plaintiffs' factual allegations fail to establish a "causal connection" between any of these policies and any "significant disparate

---

treatment component of this allegation fails, as discussed herein, the disparate impact component also fails, as Plaintiffs have not established any significant disparate impact on women's pay caused by this alleged policy.

[35] *See id.* ¶¶ 26-27 (Plaintiff Barrett alleges that she won Representative of the Quarter awards in each year from 2005-2008, and won the Carpenter Award in 2007), ¶ 61 (Plaintiff Houser alleges that she won the Rookie of the Year award in 2003, the Execution Award for four separate quarters between 2003 and 2005, the Representative of the Quarter award four times between 2004 and 2009, the Team Leadership Award in 2004, and the MVP award in 2006), ¶ 105 (Plaintiff Jones alleges that she won Representative of the Quarter awards in 2008 and 2009, and was awarded Forest Excellence points in 2009), ¶ 125 (Plaintiff Seard alleges that in 2005-2006 she won Career Pathway Awards, the Waco Team Award, the MVP award, and multiple Representative of the Quarter awards), ¶ 195 (Plaintiff Eckenrode alleges that she won the President's Club award for Fiscal Year 2006 and won four Representative of the Quarter awards between 2005 and 2009), ¶ 227 (Plaintiff Smyth alleges that she won the Leadership Award in 2005 and three Representative of the Quarter awards between 2005 and 2010).

impact" on the compensation of female sales representatives.  This failure is fatal to Plaintiffs' nationwide disparate impact class claim under Count I.  *See supra* Section III.A.2.

First, Plaintiffs allege, "[o]n information and belief," that "the manner in which Forest management determines the base salary to be paid to employees, including the criteria considered and weighted, disproportionately adversely affects and has a disparate impact upon women."  SAC ¶ 377.  However, this allegation plainly fails to support a claim for pay discrimination under Title VII for the same reason that it fails to support the EPA collective action claim: of the eleven Plaintiffs, only one has alleged any facts, beyond mere "information and belief," to show that she received a lower starting salary than a male counterpart (*see supra* pp. 9-11), and Plaintiffs acknowledge that their allegation about the disparate impact of this policy is also made upon mere "information and belief."  SAC ¶ 377.  The lone instance of a female claiming that a male received a higher starting salary than she did – with (once again) no statistics supporting a nationwide disparity in starting salaries by gender – cannot establish that the (unspecified) "manner" in which Forest determines starting salaries or the (unidentified) "criteria" used to do so causes any "significant disparate impact" on women's pay.

Second, Plaintiffs allege that "[t]he inclusion of or weight given by Forest policy to manager-supplied performance assessments and FTEs, in comparison to objective sales performance, has a disparate impact on the performance reviews and merit increases of women[.]"  *Id.* ¶ 378.  But as discussed above, Plaintiffs allege no statistics that could support this nationwide class claim for pay discrimination, nor does any Plaintiff actually allege that she received a low performance score on account of her gender.  *See supra* pp. 19-20.  Indeed, only two Plaintiffs even allege (as a threshold matter) that they received unjustifiably low performance scores that reduced their salary increases (putting aside the alleged reason for the

low scores).  *Id.* p. 20.  These shortcomings undercut Plaintiffs' hypothesis that the inclusion of or weight given to performance scores in determining annual salary increases has any significant disparate impact on female sales representatives at Forest as a whole and across the country, and prevent Plaintiffs from adequately stating a disparate impact claim tied to this policy.

Third, Plaintiffs allege that Forest has a "policy of refusing to pay earned bonuses to employees on leave for six weeks or more" and that this purported policy has a "disparate impact on women" because "maternity or parental leave taken by women is normally greater than six weeks[.]"[36]  SAC ¶ 381.  Putting aside that no such policy even exists and Forest employees <u>are</u> paid their earned bonuses at all times (whether on leaves of absence or not), Plaintiffs' own pleading belies the very existence of this alleged policy.  Plaintiffs Barrett, Eckenrode, Smyth and Lowder each allege that they took leaves of absence of more than six weeks – with six such leaves of absence in total among them – yet none contend that they were denied earned bonuses during any of their leave periods.[37]  Indeed, the number of Plaintiffs who apparently did receive their earned bonuses even while on maternity or short-term disability leave is double the number who allege they did not.[38]  As such, the SAC simply does not support a plausible finding that this purported policy of denying earned bonuses to employees on leaves of absence for more than six weeks actually exists.

---

[36] This alleged policy presumably relates to Plaintiffs' claim under Count I for Title VII pay discrimination on the basis of gender, and not their claim under Count III for Title VII discrimination on the basis of pregnancy, because the only alleged impact is on leaves extending more than six weeks, and the Pregnancy Discrimination Act applies only to the disability portion of maternity leave policy, which is generally presumed to be six weeks.  *See, e.g.*, *Johnson v. Univ. of Iowa*, 431 F.3d 325, 330 (8th Cir. 2005) (discussing the presumption that that women generally need six weeks to recover from childbirth); *Briggs v. Women in Need, Inc.*, 819 F. Supp. 2d 119, 122 (E.D.N.Y. 2011) (noting that disability leave for pregnancy under policy was six weeks).

[37] *See id.* ¶ 33 (Barrett); ¶ 195 (Eckenrode); ¶¶ 246, 254 (Smyth); ¶¶ 335-36 (Lowder).

[38] *See* SAC ¶ 84 (Houser), ¶ 126 (Seard).  Notably, neither Plaintiff Houser nor Plaintiff Seard made any such allegation in either the original Class Action Complaint or the AC.

Finally, Plaintiffs allege that Forest's policy of offering job-sharing to Territory Sales Representatives but not to higher-level positions has a "disparate impact on women" because "women in higher-level positions [must] abandon their higher-level positions and the associated compensation and career attainments and be demoted to that lower position as a precondition to participate in the program and accommodate their caregiving roles." SAC ¶ 389. As a threshold matter, this policy cannot support a Title VII pay claim because it plainly concerns *promotions* (not pay), and as a matter of law, Plaintiffs may not shoehorn a promotions claim into a pay claim. *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 631 (10th Cir. 2012) (holding that a "failure-to-promote claim is not a compensation-related claim," even when the failure-to-promote affects compensation). This bedrock principle is derived from Title VII itself, which delineates the distinct types of adverse employment actions that are unlawful when based upon an employee's protected status,[39] and has been recognized by the Second Circuit, *see Miller v. Kempthorne*, 357 F. App'x 384, 385-86 (2d Cir. 2009), and, indeed, "universally" by the courts. *Noel v. Boeing Co.*, 622 F.3d 266, 274-75 (3d Cir. 2010).[40]

Regardless, this facially-neutral policy cannot substantiate a claim under Count I because a Title VII gender-based pay claim requires facts demonstrating that a woman was paid less than a man for work requiring substantially the same responsibility. *See Lee v. Overseas Shipholding Grp., Inc.*, 2001 WL 849747, at *6 (S.D.N.Y. July 30, 2001) (Cote, J.). Plainly, Plaintiff Smyth's allegations do not fit the bill for such a claim. Rather, allegations such as those made by Plaintiff Smyth (SAC ¶¶ 248-49), who <u>voluntarily</u> chose to return to a lower-level position that

---

[39] *See* 42 U.S.C. § 2000e-2(a) (making it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his **compensation**, terms, conditions, or privileges of employment" on the basis of an employee's protected status) (emph. added).

[40] *Accord Schuler v. PriceWaterhouseCoopers, LLP*, 595 F.3d 370, 375 (D.C. Cir. 2010) (holding that "the decision whether to promote an employee to a higher paying position is not a 'compensation decision or other practice'" under Title VII and cannot support a "claim of 'discrimination in compensation'").

entailed less compensation but the potential for job-sharing cannot, as a matter of law, support

the claim that this policy has a discriminatory disparate impact on women, whether on an

individual or a class-wide basis.[41]  And because no other Plaintiff alleges that she was adversely

affected by this policy, the SAC lacks any showing that the policy actually has a significant

disparate impact on women (whether with respect to pay or promotions).

###   C.   Plaintiffs' Individual Pay Claims Also Fail

For the reasons discussed in Section III.B above, not only have Plaintiffs failed to state

class claims for Title VII pay discrimination, but their individual claims must be dismissed as

well.  Six of the Plaintiffs (Plaintiffs Clinton, Eckenrode, Avila, Harley, Lowder and Le) allege

no facts whatsoever in support of their respective claims for Title VII pay discrimination; their

only references to pay are speculative, "information and belief" allegations about co-workers'

salaries (see supra pp. 9-10), and/or allegations about what their pay could have been had they

been promoted, which cannot be conflated with claims for pay discrimination under Title VII

(see supra p. 24).  The remaining five Plaintiffs all fail to state adequate claims under Count I

because they (i) do not allege facts sufficient to show that Forest management intentionally

reduced their pay on account of their gender (Plaintiffs Barrett, Houser, Jones, Seard and Smyth),

and/or (ii) assert pay claims on the basis of an "earned bonus" policy which, the weight of the

---

[41] *Capruso v. Hartford Fin. Serv. Group, Inc.*, 2003 WL 1872653, at *6-7 n.12 (S.D.N.Y. Apr. 10, 2003) (Carter, J.) (where plaintiff claimed that employer's alleged policy of denying promotions to participants in employer's part-time program had a disparate impact on women, explaining difficulty of proving causation because participation in the part-time program "was strictly voluntary," so individual choice, not the employer's "practice … was the cause of an unlawful impact"); *Aliotta v. Bair*, 614 F.3d 556, 567 (D.C. Cir. 2010) (in the context of an ADEA disparate impact claim, holding that the "voluntary" albeit "difficult" decisions of certain employees to accept buyouts could not constitute evidence that the company's downsizing decisions had a discriminatory disparate impact on the basis of age); *Peterson v. Seagate US LLC*, 809 F. Supp. 2d 996, 1009 (D. Minn. 2011) ("Employees that chose to terminate their employment through [the Special Incentive Retirement Plan ("SIRP")] did not suffer an adverse employment action. Accordingly, it would be inappropriate to include SIRP under Plaintiffs' disparate impact claim.").

allegations in the SAC suggests, does not actually exist (Plaintiffs Houser and Seard).[42]  Thus,

Count I must be dismissed in its entirety.

## IV.   The Class and Individual Claims of Pregnancy Discrimination (Count III) Must Be Dismissed in Their Entirety

In Count III, Plaintiffs Barrett, Houser, Eckenrode, Smyth, and Harley allege individual

and class disparate treatment and disparate impact claims of pregnancy discrimination with

respect to "compensation, performance review, merit increase, probation, promotion, leave, job-

sharing and human resources and other terms and conditions of employment."  SAC ¶¶ 456.[43]

While Plaintiffs cite only to Title VII generally in their claim, the relevant statute is the

Pregnancy Discrimination Act (the "PDA"), which Congress enacted as an amendment to Title

VII to extend the statute's protection to pregnant women.  *See Maldonado v. U.S. Bank*, 186 F.3d

759, 762 (7th Cir. 1999) (citing 42 U.S.C.A. § 2000(e)(k)).

The PDA provides that "women affected by *pregnancy, childbirth, or related medical

conditions* shall be treated the same for all employment-related purposes … *as other persons not

so affected but similar in their ability or inability to work*."  42 U.S.C. § 2000e(k) (emph. added).

On its face, the statute limits its prohibition to discrimination because of a woman's <u>pregnancy</u>

and <u>pregnancy</u>-related <u>medical</u> <u>conditions</u>, as compared to the employer's treatment of

employees with other disabilities.  *Maganuco v. Leyden Cmty. High Sch. Dist. 212*, 939 F.2d

440, 444 (7th Cir. 1991) ("The plain meaning of the PDA, its legislative history, and the

---

[42] The failure of the Plaintiffs' Title VII pay claims on an individual basis necessarily requires that the class claim be dismissed as well.  *See O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.").

[43] Curiously, while Plaintiffs plead a Title VII Pregnancy Sub-Class comprising "[a]ll female Sales Representatives who are, have been, or will become pregnant while employed by Forest …" (*see id.* ¶ 402), they appear to bring Count III on behalf of the entire Title VII Gender Class, and not the Title VII Pregnancy Sub-class.  However, because the PDA only applies to "women affected by pregnancy, childbirth, or related medical conditions," Plaintiffs' claim necessarily cannot encompass claims by women who have not been pregnant.

Supreme Court's subsequent discussions of the origins and purposes of the Act all suggest that its scope is limited to policies which impact or treat medical conditions relating to pregnancy and childbirth less favorably than other disabilities.").  Thus, for example, whereas the "period of disability" caused by childbirth is a pregnancy-related medical condition for purposes of the PDA, the "special type of leave, maternity leave," that goes beyond the period of the mother's medical disability, which many employers, including Forest, offer "to satisfy the desire many women … have to stay at home after they give birth to spend more time with their infants," is "not the inevitable consequence of a medical condition related to pregnancy," and, therefore, "fall[s] outside the scope of the PDA."  *Id.* at 444-45.

Importantly, the PDA does <u>not</u> make parents a protected class, and does not provide a cause of action for a woman who was pregnant and, following the birth of her child, requests accommodation because of her new status as a mother.  *See, e.g.*, *McNill v. N.Y.C. Dep't of Corr.*, 950 F. Supp. 564 (S.D.N.Y. 1996) (Pitman, Mag. J.) (holding that "[t]he PDA only provides protection based on the condition of the mother—not the condition of the child," and collecting cases holding that requests for extended maternity leave to care for a child are not protected by the PDA); *Moawad v. Rx Place*, 1999 WL 342759, at *6 (E.D.N.Y. May 27, 1999) (noting that "women claiming conditions of the infant requiring the mother's presence, such as the need to breast-feed or care for sickly infants, cannot raise a claim under the PDA"); *Briggs v. Women in Need, Inc.*, 819 F. Supp. 2d 119, 127 (E.D.N.Y. 2011) (leaves-of-absence for childrearing purposes are not conditions protected under the PDA).  Simply put, one's status as a caregiver is not protected under the PDA, concepts that Plaintiffs' SAC confusingly conflates.

This Court's recent opinion in *E.E.O.C. v. Bloomberg L.P.*, 778 F. Supp. 2d 458 (S.D.N.Y. 2011) (Preska, J.), is instructive.  There, the EEOC alleged that Bloomberg had

engaged in a pattern-or-practice of discriminating against pregnant employees or those who had recently returned from maternity leave by reducing their compensation, demoting them, excluding them from management meetings, and subjecting them to stereotypes regarding female caregivers. *Id.* at 470.  In dismissing the action, Judge Preska rejected the EEOC's claims because, among other reasons, the EEOC failed to compare "the experiences of Bloomberg's pregnant or mother employees with similarly situated employees," *i.e.*, employees who had also taken off significant time from work for non-pregnancy related reasons. *Id.* at 473.  This comparison is "vital" to show that "the employee in the protected class was treated differently because she was in that class." *Id.* at 473.  As Judge Preska explained, "[a] policy may discriminate between those employees who take off long periods of time in order to raise children and those who either do not have children" or who do, but do not take time off from work. *Id.* "The Pregnancy Discrimination Act requires the employer to ignore an employee's pregnancy, but … not her absence from work, unless the employer overlooks the comparable absences of non-pregnant employees." *Id.* (quoting *Fisher v. Vassar College*, 70 F.3d 1420, 1448 (2d Cir. 1995)).  Forest has no such policies that illegally discriminate against employees who take time off from work versus those who don't, but, as Judge Preska noted in *Bloomberg*, there is a distinction between such policies and policies that illegally target pregnant women.

A.     **Plaintiffs Fail to Allege Any Facts Showing a Pattern-or-Practice of Discrimination Based on Pregnancy**

Plaintiffs Barrett, Houser, Eckenrode, Smyth and Harley purport to bring a class disparate treatment pattern-or-practice claim under the PDA on the grounds that "Class Representatives and members of the proposed Class were not treated the same for all employment-related purposes, including compensation, performance review, merit increase, probation, promotion, leave, job-sharing and human resources and other terms and conditions of employment as other

similarly-situated employees with similar ability or inability to work who were either non-pregnant or not known to be pregnant."  SAC ¶ 456.  As support for their class-wide pattern-or-practice claim, Plaintiffs identify a <u>single</u> allegedly discriminatory practice based on pregnancy.[44]  Specifically, Plaintiffs allege that "Forest management has a practice of discriminating against women who become pregnant and have children in the administration and scoring of performance reviews, and, as a result, in annual merit increases and decisions to place employees on probation."  SAC ¶ 379.  Plaintiffs further allege that this purportedly discriminatory practice of "disproportionately lowering the performance reviews of women who have become pregnant and who have had children" (*id.*) "disproportionately disqualifies or disadvantages women interested in promotions."  *Id.* ¶ 386.

Plaintiffs' pattern-or-practice claim under the PDA fails as a matter of law because their factual allegations are wholly insufficient to state a plausible claim that intentional discrimination against pregnant women is Forest's "standard operating procedure."  *See supra* Section III.A.1 (explaining that individualized experiences are insufficient to establish a pattern-or-practice claim).  As a preliminary matter, despite purporting to bring a nationwide pattern-or-practice claim based on an alleged practice of giving women lower Field Trip Evaluation ("FTE") scores because of pregnancy, which in turn allegedly "disproportionately disqualifies or disadvantages women interested in promotions" (SAC ¶ 386; *see also id.* ¶ 379), the SAC is devoid of any allegations showing that any Plaintiff was "disqualifie[d]" from or

---

[44] Plaintiffs' allegations with respect to allegedly discriminatory practices related to Forest's job-sharing policies (*see* SAC ¶¶ 380, 387) cannot form the basis of a claim under the PDA because job-shares are not an accommodation for pregnant women or women with pregnancy-related medical conditions.  Rather, job-share opportunities provide an option for employees who may have childcare responsibilities.  *See, e.g.*, SAC ¶ 89 (alleging Plaintiff Houser inquired about job-share positions "shortly after she returned from maternity leave"); ¶ 133 (alleging Plaintiff Seard "asked [] whether she could pursue job share so that she could spend more time with her young son"); ¶ 267 (alleging Plaintiff Avila "had two young children, so she asked about job-share opportunities").  But, as discussed above, the PDA does not provide a cause of action for a woman who requests an accommodation related to care for her children.  *See, e.g.*, *McNill*, 950 F. Supp. at 569-70; *Wallace*, 789 F. Supp. at 870.

"disadvantage[d]" in seeking a promotion as a result of her FTE scores.  Indeed, Plaintiffs' own allegations show that pregnant women are considered for promotions while pregnant (*see* SAC ¶¶ 73-74, 204) and are promoted while pregnant (*see id.* ¶ 77).  Thus, discrimination in promotions against women on the basis of pregnancy cannot be Forest's "standard operating procedure," as required under the pattern-or-practice case law.

Moreover, and quite significantly, <u>none</u> of the Plaintiffs alleges any facts tying an alleged discriminatory lowering of FTE scores to the "decision[ ] to place employees on probation," much less any facts that would show a company-wide policy of intentionally lowering the FTE scores of women based on pregnancy.  *See id.* ¶¶ 48, 52 (alleging Plaintiff Barrett was placed on probation after having been placed on formal warning status for "exhibiting inappropriate behavior and attitude during sales calls," and <u>not</u> because of her FTE scores); ¶ 297 (alleging Plaintiff Harley was given a Letter of Concern because she "lacked salesmanship," and <u>not</u> because of her FTE scores).

Finally, Plaintiffs' claim is deficient because they have not alleged any statistics whatsoever that would support their nationwide claim of discrimination against women on the basis of pregnancy.  *See Middleton*, 92 F.3d at 405 ("*strong* statistical evidence" is necessary for a pattern-or-practice claim) (emph. in original); *see also Robinson*, 267 F.3d at 158 & n.5.  Moreover, as to the substance of Plaintiffs' factual allegation that the performance reviews of pregnant women or women with children are "disproportionately" lowered, resulting in lower annual merit increases or placement on probation, Plaintiffs' pattern-or-practice claim fails because they have not alleged any facts to suggest that pregnant women or women returning from pregnancy disability leave are systematically "treated differently from others who took

leave" with respect to performance reviews.  *See Bloomberg*, 778 F. Supp. 2d 468.[45]  Plaintiffs'

failure to plead proper comparisons with similarly-situated employees is fatal to their claim.  *Id.*

(collecting cases).

Because Plaintiffs have not alleged any facts showing that it is Forest's "standard

operating procedure" to "disproportionately lower[] the performance reviews of women who

have become pregnant and who have had children," which allegedly results in lower annual

merit increases, probation, and disqualification for or discouragement from seeking promotions,

their pattern-or-practice claim must be dismissed.

### B.      Plaintiffs Fail to Allege a Disparate Impact Claim Under the PDA

Plaintiffs make the wholly-conclusory allegation that Forest's policies, practices, and

procedures "have produced a disparate impact against Class Representatives and the Class

members who have been, are or will become pregnant ..."  SAC ¶ 457.  Plaintiffs have not come

close to adequately pleading a claim of disparate impact against pregnant women.  *See supra*

Section III.A.2 (discussing the standard for pleading a disparate impact claim).

Specifically, Plaintiffs' claim of disparate impact on the basis of pregnancy fails because

Plaintiffs do not identify a single facially neutral policy that allegedly has an adverse impact on

pregnant women on a company-wide basis.  Indeed, Plaintiffs do not even identify in what aspect

of their jobs women are allegedly adversely impacted based on pregnancy, and certainly have not

alleged any facts demonstrating a causal connection between an (unidentified) policy and an

(unspecified) impact.[46]  The SAC is lacking in any statistics relating to pregnant women

---

[45] Indeed, only one Plaintiff even alleges that the lowering of her FTE scores upon return from leave resulted in a reduction in her annual merit increase, but she self-servingly (and impermissibly) measures the alleged reduction by comparing her merit increase after leave with <u>her own</u> merit increase in prior years, and not to the merit increases received by any non-pregnant employees who also took a leave of absence from work.  SAC ¶¶ 94-96 (Houser).

[46] In the AC, while not identifying a specific policy, the Plaintiffs did allege that the disparate impact was with respect to opportunities for promotion.  AC ¶ 400.  In the SAC, however, Plaintiffs say nothing more than

generally, much less any showing that pregnant women are adversely impacted in a way that other employees similar in their ability or inability to work are not so impacted.  With no allegation of any specific policy, or facts demonstrating a causal connection between a policy and any alleged disparate impact, Plaintiffs have failed to state even a *prima facie* claim of disparate impact, and their claim should be dismissed with prejudice.[47]

### C.    Plaintiffs' Individual Claims for Pregnancy Discrimination Also Fail

In addition to asserting class-wide claims pregnancy discrimination, Plaintiffs Barrett, Houser, Eckenrode, Smyth, and Harley assert individual claims under the PDA.[48]  Putting aside the failure of Plaintiffs' class-wide pregnancy claims, a close examination of the SAC reveals conclusively that none of the Plaintiffs has come close to sufficiently stating a claim for relief under the PDA on even an individual basis.  This too is fatal to the class claim.[49]

### 1.    Plaintiffs Barrett, Houser, and Smyth Fail to State Individual Claims for Pay Discrimination Under the PDA

Plaintiffs Barrett, Houser, and Smyth assert individual claims for pay discrimination under the PDA on the grounds that they allegedly received lower merit increases to their base salaries, lower bonuses and fewer stock options after they returned from maternity leave than they had received in the past.  Each of their individual pay discrimination claims under the PDA fails as a matter of law because Plaintiffs have failed to plead facts showing that the alleged reduction in compensation was because of pregnancy.

---

unidentified policies "have a disparate impact" on women who have been pregnant, without pleading any facts as to the nature of the alleged disparate impact.  SAC ¶ 457

[47] *See Collette*, 132 F. Supp. at  276-77 (dismissing disparate impact claim where plaintiff did not (1) allege any specific employment policy or practice which might be actionable under Title VII; (2) failed to allege any "significant" disparate impact; and (3) alleged any facts showing a causal connection).

[48] Count III, Pregnancy Discrimination, is the only class claim that is not brought on behalf of all eleven Plaintiffs.

[49] *See O'Shea*, 414 U.S. at 494 ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.").

To state a claim for pay discrimination under the PDA, a plaintiff must allege that she was paid less than non-pregnant employees who were similarly situated with respect to their ability or inability to work.[50]  For a plaintiff who has taken maternity leave to state a claim, she must compare her pay post-maternity leave to the pay of similarly situated employees who took a leave of absence for reasons unrelated to pregnancy.  *Bloomberg I*, 2010 WL 3466370, at *12 (to state a pay discrimination claim under the PDA, employees who took maternity leave must compare their pay to "other similarly situated Bloomberg employees, *i.e.*, leave takers").[51]

Plaintiffs failed to satisfy this requirement in the AC because they alleged only (and without any basis) that after their maternity leaves, they were paid less than "employees who did not take maternity leave."  *See* AC ¶¶ 43-46, 88-90, 217-18.  As Defendants pointed out in their Motion to Dismiss the AC, employees who did not take maternity leave are not similarly situated to Plaintiffs for purposes of this analysis.  *See* MTD AC at 38-39; *see also Bloomberg I*, 2010 WL 3466370, at *11-12 (holding that employees "who took some type of maternity or pregnancy-related leave" are not similarly situated for purposes of the PDA to employees "who didn't take a maternity leave").  To cure this defect and state a claim under the PDA, Plaintiffs' SAC would have had to allege that Plaintiffs were paid less than employees who took a leave of absence of similar duration for reasons unrelated to pregnancy.  The SAC contains no such allegations.

In fact, the SAC does not come close to meeting this requirement.  Plaintiffs no longer allege that they were paid less than employees who did not take maternity leave, but they still fail

---

[50] *See EEOC v. Bloomberg L.P.*, 2010 WL 3466370, at *7, 12 (S.D.N.Y. Aug. 31, 2010) (Preska, J.) ("*Bloomberg I*") (the PDA "specifically requires that pregnant women be treated the same as all other employees with similar disabilities") (citations omitted); *Cruse v. G&J USA Publ'g*, 96 F. Supp. 2d 320, 326 (S.D.N.Y. 2000) (Scheindlin, J.) (holding that a *prima facie* case of pay discrimination requires evidence that persons outside plaintiff's protected class were paid more than plaintiff).

[51] *Bloomberg*, 778 F. Supp. 2d 468 (a "plaintiff must show that she was treated differently from others who took leave or were otherwise unable or unwilling to perform their duties for reasons unrelated to pregnancy …").

to allege that they were paid less than employees who took time off work for non-pregnancy related reasons. Instead, Plaintiffs Barrett and Houser allege that because their "President's Club ranking[s] w[ere] not adjusted to account for [their] three months of maternity leave when [they] w[ere] not in the field," their President's Club rankings declined after their return from maternity leave, which in turn caused them to receive smaller merit increases, and, for Plaintiff Barrett, fewer stock options, than they had received in past years when they did not take time off from the field.[52] SAC ¶¶ 34, 36-38, 85, 87-88. But Plaintiffs do not allege that Forest adjusts the President's Club rankings of employees out on non-pregnancy-related disability leaves, nor do Plaintiffs allege, in even conclusory fashion, that they were paid less than employees who took leaves of absence for reasons unrelated to pregnancy.[53] Plaintiffs cannot state a claim for pay discrimination under the PDA by comparing their pay in a year in which they took maternity leave to their own pay in years in which they did not take any leaves of absence from work. Their (repeated) failure to allege that they were paid less than similarly situated employees who took a leave of absence for non-pregnancy-related reasons requires dismissal of their claims. *See supra* p. 33.

Plaintiff Smyth likewise fails to allege that any alleged decrease in her compensation was on account of her pregnancies. First, she alleges that she received no annual merit increase for fiscal year 2011 because she had (voluntarily) transferred from Specialty Sales Representative to Territory Sales Representative, which made her ineligible for a salary increase. SAC ¶ 253.

---

[52] Unlike Plaintiffs Barrett and Houser, Plaintiff Smyth does not allege that her President's Club ranking suffered as a result of her maternity leave. To the contrary, Plaintiff Smyth alleges that in May 2011, immediately after her return from maternity leave, "her sales performance placed her in the top quartile of all sales representatives nationwide." SAC ¶ 254.

[53] Plaintiffs Barrett and Houser also allege that they received lower FTE scores after their return from maternity leave, resulting, for Plaintiff Barrett, in a lower bonus than she had received in the past (SAC ¶ 41), and, for Plaintiff Houser, in a lower merit increase and fewer stock options than she had previously received. *Id.* ¶¶ 95-96. But, once again, Plaintiffs Barrett and Houser fail to compare their compensation to that of any similarly situated employee who took a leave of absence unrelated to pregnancy.

Thus, her own allegations establish that any alleged failure to provide her with a merit increase

for fiscal year 2011 was not because of her prior pregnancy.  Second, Plaintiff Smyth alleges that

in May 2012, approximately one month after she returned from her second maternity leave, she

was informed that she would "receive[] an annual increase of just 2.3%" for fiscal year 2012.  *Id.*

¶ 253.  But she fails to allege that employees who took non-pregnancy-related leaves of absence

of similar durations received higher annual increases.

> **2.     Forest's Alleged Denial of Extended Leave and/or Job-Share Positions
> to Accommodate Plaintiffs' Caregiver Status Is Simply Not
> Actionable Under the PDA**

Plaintiffs Houser, Eckenrode, and Smyth allege that they were denied (1) extended

maternity leave (*see* SAC ¶¶ 81-82 (Houser)) and/or (2) the ability to move to a job-share

position upon return from maternity leave.  *See id.* ¶¶ 89-90 (Houser); 208-211 (Eckenrode);

249, 250-51, 256-27 (Smyth).  But these alleged denials cannot form the basis of a claim under

the PDA because Plaintiffs do not allege that they were <u>because</u> <u>of</u> <u>pregnancy</u>.  *See Calabro v.*

*Westchester BMW, Inc.*, 398 F. Supp. 2d 281, 287 (S.D.N.Y. 2005) (Dolinger, Mag. J.).  To the

contrary, Plaintiff Houser alleges that she requested to extend her leave because of her <u>child's</u>

medical needs (SAC ¶ 81), <u>not</u> because of her pregnancy or any pregnancy-related medical

condition.  Similarly, Plaintiff Smyth alleges that she requested a job-share position "in order to

accommodate <u>her</u> <u>new</u> <u>child-care</u> <u>responsibilities</u>[,]" <u>not</u> her pregnancy or any pregnancy-related

medical condition.  *Id.* ¶ 247 (emph. added); *see also id.* ¶ 256 (alleging that Plaintiff Smyth

submitted a subsequent job-share request "to accommodate the needs of her infant son").[54]  Such

---

[54] Plaintiffs Houser and Eckenrode also allege that they were denied job-share positions, but neither was pregnant at the time, and neither alleges that she required a job-share position because of any pregnancy-related medical condition.  SAC ¶ 89 (Houser); 208-211 (Eckenrode).  Thus, Plaintiffs Houser and Eckenrode did not request job-share positions <u>because</u> of pregnancy.

alleged refusals to extend non-pregnancy-related accommodations to Plaintiffs are not actionable under the PDA as a matter of law.  *See supra* pp. 26-28.

### 3. Plaintiffs Houser and Eckenrode Fail to State Claims for Promotion Discrimination Under the PDA

Plaintiffs Houser and Eckenrode assert individual claims for promotion discrimination under the PDA because they each allegedly applied for and were denied promotions while they were pregnant.  SAC ¶¶ 74-77; 204-206.  To withstand a motion to dismiss, a plaintiff asserting a failure to promote claim <u>must</u> allege that (1) she is a member of a protected class; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) she was rejected for the position; and (4) the position was filled by someone outside the plaintiff's protected class.  *Melford v. Pfizer Pharm., Inc.*, 1999 WL 544726, at *7 (S.D.N.Y. July 26, 1999) (Preska, J.).[55]

Plaintiffs Houser's and Eckenrode's failure to promote claims fail to satisfy these <u>mandatory</u> pleading requirements.  *Brown*, 163 F.3d at 710.  Both Plaintiffs allege that they applied for Specialty Sales Representative positions while pregnant, and the positions were awarded to other women (one of whom was pregnant at the time) (SAC ¶¶ 73-78, 204-06), but neither Plaintiff Houser nor Plaintiff Eckenrode alleges <u>facts</u> demonstrating that she was qualified for the position.  The Second Circuit has held that to survive a motion to dismiss, a Title VII plaintiff asserting a failure to promote claim <u>must</u> <u>allege</u> that she was qualified for the position sought, <u>and</u> must support this allegation with <u>specific</u> <u>facts</u> describing the responsibilities of and criteria for the position sought and her own background and qualifications.  *See Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000) (Sotomayor, J.) (affirming 12(b)(6) dismissal of a Title VII failure to promote claim because plaintiff failed to allege

---

[55] Alternatively, if the position has not been filled, the plaintiff must allege that the position remained open and the employer continued to seek applicants having the plaintiff's qualifications.  *Brown*, 163 F.3d at 709-10.

specific facts about the requirements and responsibilities of the position and the plaintiff's background, without which "the complaint cannot be understood to allege, either directly or indirectly, that [the plaintiff] was qualified for the job").  While Plaintiff Houser alleges that if she had been awarded the position, she would have been calling on doctors with whom she already had a relationship (SAC ¶ 78), and Plaintiff Eckenrode alleges that she had longer tenure and generally "superior qualifications" than the woman ultimately awarded the position (*id.* ¶ 206),[56] neither alleges the actual requirements of the Specialty Sales Representative position, let alone <u>facts</u> about her own background and qualifications demonstrating that she satisfied those requirements.  Their promotions claims therefore fail as a matter of law.  *See Mendelsohn v. Univ. Hosp.*, 178 F. Supp. 2d 323, 328-29 (E.D.N.Y. 2002) (dismissing failure to promote claim because while the plaintiff alleged that he possessed a Master's Degree, had worked in the hospital for ten years and in the field for twenty years, had trained residents, fellows, and other students, and was the Charge Technologist, the complaint did not "contain a description of the responsibilities or duties of the Microbiology Lead Technologist [the position the plaintiff sought] from which one could infer that the plaintiff was qualified for that position").

### 4.   Plaintiff Harley Does Not Allege That She Suffered Any Adverse Action Because of Pregnancy

Plaintiff Harley alleges that after she announced her pregnancy, her FTE scores declined, and she was required to take personal days (rather than sick days) for her doctor's appointments. But she cannot state a claim under the PDA based on either of these occurrences, because, as a matter of law, neither constitutes an adverse employment action that she suffered because of

---

[56] Plaintiffs' self-serving assessment of their own qualifications is insufficient as a matter of law to plead that they were qualified for the positions sought.  "The Second Circuit holds that in determining whether a plaintiff has met his *prima facie* burden of demonstrating he was qualified for a position, 'being "qualified" refers to the criteria the employer has specified for the positions,' and a plaintiff's subjective belief he is qualified will not suffice." *Workneh v. Pall Corp.*, 897 F. Supp. 2d 121 (E.D.N.Y. 2012) (citing *Williams v. R.H. Donnelley Corp.*, 368 F.3d 123, 127 (2d Cir.2004).

pregnancy.

Plaintiff Harley cannot state a claim under the PDA based on the alleged drop in her FTE scores.  The mere receipt of a poor performance review does not constitute an adverse employment action as a matter of law.  *See Valentine v. Standard & Poor's*, 50 F. Supp. 2d 262, 283 (S.D.N.Y. 1999) (Sotomayor, J.) ("Negative evaluations alone, without any accompanying adverse result, however, are not cognizable."), *aff'd*, 205 F.3d 1327 (2d Cir. 2000); *Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 254 (E.D.N.Y. 2012) (collecting Second Circuit authority) ("Criticism of an employee in the course of evaluating and correcting her work is not an adverse employment action."), *aff'd*, 2013 WL 1458839 (2d Cir. Apr. 11, 2013).  The only consequence that Plaintiff Harley alleges stemmed from her purportedly low FTE scores is that because her FTE scores were below 3.0, under Forest's policy, she was not eligible to apply for promotions.  SAC ¶ 305.  But Plaintiff Harley also alleges that she was receiving FTE scores below 3.0 before she announced her pregnancy.  *Id.* ¶ 295 (alleging that on May 9, 2012, before she announced her pregnancy, she received an FTE score of 2.84).  Accordingly, she did not receive FTE scores below 3.0, and was not rendered ineligible to apply for promotions, because of her pregnancy.[57]

Plaintiff Harley also cannot state a claim based on her allegation that she was required to take personal days, as opposed to sick days, for doctor's appointments during her pregnancy (*id.* ¶ 308) because she does not allege that non-pregnant employees were allowed to use sick days for doctor's appointments.  Indeed, she specifically omits from the SAC the allegation that appeared in the AC that her manager "has never required other sales representatives to take personal days for medical appointments; neither do managers in other territories."  AC ¶ 285.

---

[57] Plaintiff Harley's receipt of a Letter of Concern (SAC ¶ 297) is similarly of no import.  She alleges that she received the Letter of Concern because of her poor performance reviews (FTEs), but she had been receiving FTE scores in the same range (below 3.0) before she announced her pregnancy.

Without any allegation comparing her treatment to that of non-pregnant employees, Plaintiff Harley has failed to establish that she was not allowed to use sick days for doctor's appointments because of her pregnancy.[58]

**V.     Plaintiffs' Title VII Class Promotions Discrimination Claim (Count II) Fails**

In Count II, Plaintiffs assert individual discriminatory failure to promote claims on the basis of gender under Title VII.  Plaintiffs' promotions claims fail because no Plaintiff satisfies the Second Circuit's clearly delineated requirement, discussed above in Section IV.C.3, that a Title VII plaintiff asserting a failure to promote claim allege that she was qualified for the position sought by pleading specific facts describing the responsibilities of and criteria for the position sought and her own background and qualifications.

Plaintiffs Smyth, Lowder, Clinton, and Avila allege that they were denied (or did not apply for) various promotions, including to Specialty Sales Representative (SAC ¶ 285), Regional Sales Trainer (id. ¶¶ 232-34, 326-27, 343), Field Sales Trainer (id. ¶¶ 161, 327), and Divisional Manager (id. ¶ 329),[59] but fail to allege the requirements for any of these positions, let alone facts about their own background and qualifications demonstrating that they satisfied those requirements.[60]  The remaining Plaintiffs – Barrett,[61] Jones, Seard, Harley, and Le – not only fail

---

[58] Plaintiff Harley cannot rely on the alleged requirement that she use sick days, rather than personal days, for her doctor's appointments for the further reason that she does not allege that she suffered any adverse consequence as a result.  She alleges that because she had to use personal days for her doctor's appointments, "her records showed an inflated number of personal days, which *could* be falsely used as evidence of poor work ethic," which "left her vulnerable to termination under Forest policy."  SAC ¶ 308 (emph. added).  Significantly, she does not allege that her high number of personal days was, in fact, "used as evidence of poor work ethic," nor does she allege that her employment was terminated because of her high number of personal days.

[59] To the extent that Plaintiffs Houser and Eckenrode bring their failure to promote claims under Count II, as well as Count III, their failure to promote claims under Count II fail for the same reasons that they fail to state a claim under Count III.  *See* Section IV.C.3.

[60] While Plaintiffs Smyth and Lowder self-servingly allege that they "believed" that they were the better candidates for the positions sought (*see id.* ¶¶ 234, 326, 343), their "belief" is irrelevant for purposes of determining whether they have adequately alleged that they were qualified for the position sought.  *See supra* n.56.

[61] Plaintiff Barrett alleges that at one point, a Regional Sales Trainer ("RST") told Plaintiff Barrett's manager "that Ms. Barrett would do the RST job well," and Ms. Barrett's manager subsequently said to her, "You're not interested

to allege facts demonstrating that they were qualified for any promotions, but also fail to allege <u>any</u> open position in which they were even interested.  Accordingly, all Plaintiffs' promotions claims must be dismissed as a matter of law under clear Second Circuit authority.  *See Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000) (Sotomayor, J.) (affirming 12(b)(6) dismissal of a Title VII failure to promote claim because plaintiff failed to allege specific facts about the requirements and responsibilities of the position and the plaintiff's background, without which "the complaint cannot be understood to allege, either directly or indirectly, that [the plaintiff] was qualified for the job").

Because Plaintiffs' individual promotions claims fail, Plaintiffs' class claims for promotion discrimination fail as well.  *See O'Shea*, 414 U.S. at 494.[62]

## VI.   Plaintiffs' Title VII Class Definitions Must Be Stricken Under Rule 23(d)(1)(D)

### A.   Standard

Rule 23(d)(1)(D) empowers the Court to strike class claims, even at the pleadings, if the allegations cannot satisfy Rule 23.[63]  Here, the Court should strike Plaintiffs' Title VII class definitions because they are clearly overbroad in temporal scope, and allowing the classes to proceed as pled would force Defendants to engage in burdensome and expensive discovery related to former employees whose claims are plainly time-barred as a matter of law.[64]

---

in becoming an RST, are you?"  SAC ¶ 45.  Plaintiff Barrett does not, however, allege that she was interested in becoming an RST or that any RST position was ever available.

[62] Plaintiffs' class claims for promotion discrimination also fail for the same reasons described in Section III.B.1 with respect to Plaintiffs' class pay discrimination claims; namely, Plaintiffs' allegations of a bottom line gender imbalance between Sales Representatives and management are insufficient as a matter of law to support class disparate treatment or disparate impact claims of promotion discrimination.  *See Brown*, 163 F.3d at 712.

[63] *See* Fed. R. Civ. P. 23(d)(1)(D) ("[T]he court may issue orders that … require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly."); *Rogers v. Capital One Servs., LLC*, 2011 WL 873312, at *7 (D. Conn. Feb. 19, 2011), *aff'd*, 447 F. App'x 246 (2d Cir. 2011).

[64] *See Croom v. W. Connecticut State Univ.*, 2002 WL 32503668, at *2 (D. Conn. Apr. 3, 2002) (noting that "'[s]ome threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case.'") (alteration in original) (citation omitted); *Edwards v. Zenimax Media Inc.*, 2012 WL 4378219, at *6-7 (D. Colo.

**B.      The Title VII Class Definitions Must Exclude Individuals Whose Claims Are Outside the Statutory EEOC Charge Period**

Plaintiffs purport to bring their Title VII claims on behalf of a Class and Sub-class of "female Sales Representatives who are, have been, or will be employed by Forest in the United States *from 2008* to the date of judgment." SAC ¶ 402 (emph. added).[65]  Under well-settled law, these putative classes must be limited to exclude individuals who ceased employment with Forest before either **October 8, 2010** or **June 10, 2010**, depending on their state of residence.

Title VII requires a plaintiff to file a charge with the EEOC within 180 days of the alleged unlawful discriminatory action, or, if the state in which the alleged discriminatory act occurred has its own anti-discrimination laws and enforcement agency (a so-called "deferral state"), within 300 days of the alleged discriminatory act.  42 U.S.C. § 2000e-5(e).[66]  While the timely filing of an EEOC charge is a prerequisite to bringing suit under Title VII, in class actions, under the so-called "piggybacking" or "single-filing" rule, putative class members who did not file EEOC charges may "piggyback" onto the timely filed charge of a representative plaintiff.  *See Avagliano v. Sumitomo Shoji Am., Inc.*, 103 F.R.D. 562, 577-78 (S.D.N.Y. 1984) (Tenney, J.).  However, "piggybacking" is only permissible if "the claims ar[ise] out of similar discriminatory treatment *in the same time frame*."  *Tolliver v. Xerox Corp.*, 918 F.2d 1052, 1056 (2d Cir. 1990) (emph. added) (citations and internal quotation marks omitted).  Thus, while representative plaintiffs in a class action may, in some circumstances, be permitted to assert class

---

Sept. 25, 2012) (striking class allegations and noting that discovery would be "futile" because "Plaintiff has not made a prima facie showing that the requirements of Rule 23 are satisfied because the class is overbroad").

[65] In response to Defendants' Motion to Dismiss, Plaintiffs revised their class definitions to delineate with greater specificity which sales positions are included as "Sales Representatives."  *See* MTD AC at 43; SAC ¶ 402.

[66] 42 U.S.C. § 2000e-5(e) provides that the 180-day charge filing period applies, except that when the claimant "has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice" (*i.e.*, a "deferral state"), the charge must be filed within 300 days of the alleged unlawful employment.  42 U.S.C. § 2000e-5(e).  The "non-deferral states" are Alabama, Arkansas, Georgia, Mississippi, and North Carolina, as well as American Samoa and Guam.  *See* Individual Field Office Webpages, *available at*  http://www.eeoc.gov/field/ (last checked on April 29, 2013).

claims on behalf of persons who have not filed EEOC charges, "a class action complaint cannot revive claims *which were already time-barred when the original charge was filed*." *Vinson v. Seven Seventeen HB Phila. Corp.*, 2001 WL 1774073, at \*12 (E.D. Pa. Oct. 31, 2001) (emph. added).

As a result, the proposed classes must be limited to those persons who could have filed a timely charge at the time the representative charge was filed. *Avagliano*, 103 F.R.D. at 578. In other words, only "those persons who allege discriminatory treatment within 180 or 300 days (depending on their state of residence) before the representative charge was filed" may be included in the class. *Rhodes v. Cracker Barrel Old Country Store, Inc.*, 2002 WL 32058462, at \*50 (N.D. Ga. Dec. 31, 2002), *report and recommendation adopted by* 213 F.R.D. 619 (N.D. Ga. 2003); *see also Avagliano*, 103 F.R.D. at 577-78 (holding that the "class must … be defined to exclude" "those individuals who terminated their employment … prior to the 300-day cut-off"); *Vinson*, 2001 WL 1774073, at \*10 (redefining Title VII class "to include only those employees who suffered their discrimination" within 180 days of the filing of the representative charge).

In the SAC, Plaintiffs allege that Plaintiff Jones's EEOC charge, filed on December 3, 2010, was the <u>earliest</u> EEOC charge filed by any Plaintiff. SAC ¶ 10. But Plaintiff Jones alleged <u>only</u> sexual harassment and retaliation in her charge. *See* Friedman Decl. Ex. G. She did <u>not</u> allege any gender discrimination in pay or promotions. *See id.* Thus, putative plaintiffs with Title VII pay and promotions claims <u>cannot</u> "piggyback" onto Plaintiff Jones's charge as a matter of law. *See, e.g.*, *Tolliver*, 918 F.2d at 1056.

The <u>earliest</u> EEOC charge filed by any Plaintiff alleging Title VII class claims for discrimination in terms of pay and promotions was filed by Plaintiff Barrett on April 6, 2011. *See* Friedman Decl. Ex. B. As a result, Plaintiffs' Title VII class claims can only reach back to

include individuals who allege discriminatory treatment before **October 8, 2010** (180 days

before the filing of Plaintiff Barrett's charge) in non-deferral states or before **June 10, 2010** (300

days before the filing of Plaintiff Barrett's charge) in deferral states.  Of course, Forest could not

have discriminated against any putative plaintiff with respect to pay and promotions (the adverse

actions Plaintiffs allege on a class-wide basis) <u>after</u> such person ceased to be employed.  By

definition, therefore, any Title VII claims of individuals whose employment ceased before

October 8, 2010 in non-deferral states or before June 10, 2010 in deferral states are time-barred,

and must be excluded from the proposed classes.  Accordingly, the Court <u>must</u> strike the 2008

commencement date of the putative Title VII Class and Sub-class, and restrict the classes to

Sales Representatives who are, have been, or will be employed in the United States since **June

10, 2010** or **October 8, 2010**, depending on their state of residence.[67]

## VII.    Certain of Plaintiffs' Individual Counts Fail as a Matter of Law and Must Be Dismissed

In the SAC, certain Plaintiffs assert individual, non-class counts under Title VII for

sexual harassment and retaliation (Counts VI and VII).  In their Motion to Dismiss the AC,

Defendants established that certain of these individual claims failed as a matter of law because

they were time-barred, had not been administratively exhausted, and/or failed to state a claim for

relief.  *See* MTD AC at 44-50.  Despite having had the opportunity to replead, the SAC fails to

cure these fatal defects.  As discussed below, Plaintiffs Jones's and Lowder's sexual harassment

---

[67] It is also noteworthy that individuals who were employed at any time even <u>after</u> June 10, 2010 or October 8, 2010 (including individuals who are currently employed by Forest) would be barred from bringing any Title VII claims for discriminatory failure to promote if they have not been denied a promotion since June 10, 2010 (in deferral states) or October 8, 2010 (in non-deferral states).  A claim for discriminatory failure to promote accrues when the plaintiff is <u>notified</u> that she has been denied a promotion.  *Vuong v. New York Life Ins. Co.*, 2009 WL 306391, at *10-11 (S.D.N.Y. Feb. 6, 2009) (Griesa, J.).  Therefore, any putative plaintiff who was denied a promotion before October 8, 2010 in a non-deferral state or before June 10, 2010 in a deferral state would be time-barred from asserting any claim based on that promotion denial, even if that putative plaintiff continued her employment after those dates.

claims and Plaintiffs Eckenrode's, Lowder's, and Le's retaliation claims fail as a matter of law, and must be dismissed with prejudice.

### A.     Count VII Must Be Dismissed as Time-Barred and for Failure to Exhaust Administrative Remedies

In Count VII, Plaintiffs Jones and Lowder assert individual claims for sexual harassment in violation of Title VII.  However, each of their claims fails as a matter of law, and Count VII must be dismissed in its entirety.

### 1.     Plaintiff Jones's Sexual Harassment Claim Is Time-Barred

Plaintiff Jones filed her EEOC charge on December 3, 2010, alleging a <u>single</u> incident of sexual harassment "in early 2008" by Divisional Manager Austin Wighaman.  *See* Friedman Decl. Ex. G; SAC ¶ 10.[68]  But, as discussed above, Title VII requires a plaintiff to file a charge with the EEOC within 300 days of an alleged discriminatory act.  42 U.S.C. § 2000e-5(e).[69]  Thus, as established in Defendants' prior motion to dismiss, Plaintiff Jones's sexual harassment claim based on that alleged incident fails as a matter of law because the claim was unquestionably time-barred when she filed her charge nearly <u>three</u> <u>years</u> after the alleged incident.  *See* MTD AC at 44.

Nothing that Plaintiff Jones now alleges in the SAC salvages her untimely harassment claim.  In the SAC, she continues to allege that Mr. Wighaman's alleged harassment of her took place "[s]hortly after [she] began working at Forest" in January 2008.  *See* SAC ¶¶ 104, 108.  In addition, she now alleges – for the first time, despite having had three opportunities before the

---

[68] In both the Class Action Complaint and the AC, Plaintiff Jones also alleged only the same single incident of sexual harassment in 2008 by Mr. Wighaman that she alleged in her EEOC charge.  *See* Compl. ¶¶ 98-104; AC ¶¶ 102-108.

[69] Plaintiff Jones filed her Charge in the EEOC's Dallas, Texas District Office.  *See* Friedman Decl. Ex. G (Charge of Discrimination, dated November 24, 2010).  Under Texas's workshare agreement with the EEOC, a charge filed with the EEOC is automatically considered to be filed with the Texas Commission for Human Rights and so a plaintiff has 300 days from the alleged discriminatory act to file his or her charge.  *See Enguita v. Neoplan USA Corp.*, 390 F. Supp. 2d 616, 621-22 (S.D. Tex. 2005).

SAC to state a claim based on Mr. Wighaman's alleged conduct – that "in the spring of 2009,"

another employee saw "Mgr. Wighaman leering at Ms. Jones so noticeably that he drew Ms.

Jones' attention to the problem."  *See id.* ¶ 113.  Even assuming, *arguendo*, that this alleged

incident "in the spring of 2009" could constitute actionable sexual harassment,[70] Plaintiff Jones

did not file her EEOC charge until December 3, 2010 – far more than 300 days after the alleged

incident.  *See* SAC ¶ 10.  Therefore, any claim based on that incident was time-barred when she

filed her charge.

In the SAC, Plaintiff Jones seeks to rely on the continuing violations doctrine to save her

untimely claim.  *See* SAC ¶ 494.  But this doctrine is not available to her as a matter of law.  The

only allegation Plaintiff Jones proffers concerning Mr. Wighaman after the alleged spring 2009

"leering" incident (*id.* ¶ 113) is that "[i]n or about late 2009 or early 2010" (*id.* ¶ 104), he

became her manager, and she "regularly interact[ed]" (*id.* ¶ 114) with him in that capacity.  She

does <u>not</u> allege a single incident of even arguably actionable conduct by Mr. Wighaman that

occurred after the spring of 2009, let alone within 300 days of the filing of her charge on

December 3, 2010.  As a result, the continuing violations doctrine cannot salvage her untimely

claim for sexual harassment as a matter of law.  *Patterson v. County of Oneida*, 375 F.3d 206,

221 (2d Cir. 2004) ("To bring a claim within the continuing violation exception, a plaintiff must

at the very least allege that one act of discrimination in furtherance of the ongoing policy

occurred within the limitations period.").  Accordingly, because Plaintiff Jones has not alleged

any purported harassment beyond two isolated incidents that occurred over one year apart and

---

[70] Plaintiff Jones's claim also fails because the alleged instances of harassment (which are alleged to have occurred over one year apart) are not, as a matter of law, sufficiently severe or pervasive to create abusive working environment.  *See Alfano v. Costello*, 294 F.3d 365, 373-74 (2d Cir. 2002) (a plaintiff must show "that [her] workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered"); *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997) (incidents of alleged harassment must be more than "episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive") (citations omitted).

more than 300 days before she filed her charge, her sexual harassment claim must be dismissed

with prejudice.

### 2.  Plaintiff Lowder's Sexual Harassment Claim Must Be Dismissed For Failure to Exhaust Administrative Remedies

As established in Defendants' Motion to Dismiss the AC, Plaintiff Lowder's sexual

harassment claim must be dismissed as a matter of law for failure to exhaust administrative

remedies.  *See* MTD AC at 45.  Nothing that she has alleged in the SAC changes this result.

In the SAC, Plaintiff Lowder admits that she never filed a charge with the EEOC.  *See*

SAC ¶ 10.  The Second Circuit's "piggybacking" rule (*see supra* pp. 41-42) is of no aid to

Plaintiff Lowder because no "similarly situated" Plaintiff filed a timely charge with the EEOC

alleging "the same discriminatory treatment" in the same timeframe that Plaintiff Lowder alleges

here.  *Snell v. Suffolk Cnty.*, 782 F.2d 1094, 1101 (2d Cir. 1986); *see also Adams v. N.Y. State

Educ. Dep't*, 752 F. Supp. 2d 420, 466-67 (S.D.N.Y. 2010) (Marrero, J.), *aff'd sub nom. Ebewo

v. Fairman*, 460 F. App'x 67 (2d Cir. 2012).[71]  Plaintiff Jones is the only Plaintiff who filed an

EEOC charge alleging sexual harassment (*see* Friedman Decl. Ex. G), and, as discussed above,

her charge was not timely filed with respect to her sexual harassment claim.  *See supra* pp. 44-

45.  Therefore, Plaintiff Lowder cannot piggyback off Plaintiff Jones's charge as a matter of law.

*Adams*, 752 F. Supp. 2d at 467.

Further, even assuming, *arguendo*, that Plaintiff Jones's charge was timely, Plaintiff

Lowder's sexual harassment claim is clearly not "similarly situated" to Plaintiff Jones's claim,

such that the "single filing" rule should apply.  *See supra* pp. 41-42.  They simply do not allege

the "same discriminatory treatment" within the same time period and by the same individual:

---

[71] In deciding whether the "single filing rule" should excuse a claimant's failure to exhaust, the question is whether "it can fairly be said that no conciliatory purpose would be served by filing separate EEOC charges."  *Tolliver*, 918 F.2d at 1058 (citation and internal quotation marks omitted).

Plaintiff Jones alleges two isolated instances of sexual harassment by a manager in Texas in 2008 and 2009, whereas Plaintiff Lowder alleges harassment by her co-workers and doctors in Illinois through May 2012. *See Adams*, 752 F. Supp. 2d at 466-67 (holding that non-filing plaintiffs were not similarly-situated such that their claims could be considered reasonably related in part because the filing and non-filing plaintiffs had not suffered the same discriminatory conduct, by the same individuals, and within the same time frame). Because Plaintiff Lowder lacks a timely charge on which to piggyback, her claim must be dismissed for failure to exhaust administrative remedies.

### B.   Plaintiffs Eckenrode's, Lowder's and Le's Retaliation Claims (Count VI) Must Be Dismissed

#### 1.   Plaintiffs Eckenrode, Lowder and Le Have Not Exhausted Their Administrative Remedies

The retaliation claims of Plaintiffs Eckenrode, Lowder and Le must be dismissed because they failed to exhaust administrative remedies before filing suit. *See* SAC ¶ 10. As discussed above, exhaustion with the EEOC or a similar state agency is a necessary prerequisite to filing suit under Title VII. *See, supra* p. 41. Plaintiffs Eckenrode's, Lowder's and Le's failure to exhaust is only excused if their claims are "similarly situated" to the timely-filed charge of a Plaintiff who did exhaust. *See Snell*, 782 F.2d at 1100; *Adams*, 752 F. Supp. 2d at 467.

The only EEOC charges alleging retaliation are those filed by Jones and Seard. *See* Friedman Decl. Exs. G (Jones), J (Seard). These charges, however, allege retaliation only with respect to a specific manager in Texas in 2010. *Id.* Title VII retaliation claims based on the (1) alleged actions of Plaintiff Eckenrode's manager in Pennsylvania in 2011 in response to Plaintiff Eckenrode's request for a job share position (SAC ¶ 213; *see infra* p. 49); (2) the alleged actions of Plaintiff Lowder's managers and co-workers in Illinois in 2012 after she joined the instant lawsuit (*id.* ¶¶ 336-37); and (3) the alleged actions of Plaintiff Le's manager in California in

2012 after she complained of sexual harassment by a co-worker (*id*. ¶ 358) are not in any way related to Plaintiff's Jones's and Seard's charges, as they do not plead the same discriminatory treatment within the same time period or by the same individuals.  *See Adams*, 752 F. Supp. 2d at 467 (claims not reasonably related where the filing and non-filing plaintiffs had not suffered the same discriminatory conduct, by the same individuals, and within the same time frame).  Plaintiffs Eckenrode, Lowder and Le, therefore, cannot piggy-back off those charges, and their retaliation claims must be dismissed for failure to exhaust.

> **2.    Even Assuming, *Arguendo*, That Plaintiff Eckenrode Had Exhausted, Her Retaliation Claim Still Fails**

Even assuming, *arguendo*, that Plaintiff Eckenrode had exhausted her administrative remedies, her retaliation claim still fails as a matter of law because despite having had the opportunity to amend, she does not allege that she engaged in protected activity under Title VII or that she suffered any adverse employment action <u>after</u> she engaged in any purported protected activity (or at any time).  *See* MTD AC at 47-49.  Her claim must be dismissed with prejudice.

To state a claim of retaliation in violation of Title VII, a plaintiff must allege facts establishing that "(1) she engaged in a protected activity; (2) the employer was aware of that activity; (3) [she] suffered an adverse employment action; and (4) a causal connection existed between the protected activity and the adverse action."  *Mandavia v. Columbia Univ.*, 2012 WL 6186828, at *12 (S.D.N.Y. Dec. 12, 2012) (Oetken, J.) (citations omitted).  Plaintiff Eckenrode's retaliation claim fails for the threshold reason that she does not allege that she engaged in any protected activity under Title VII.  "The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination."  *Cruz*, 202 F.3d at 566 (citing 42 U.S.C. § 2000e-3).  Plaintiff Eckenrode does not allege that she ever raised any gender-based complaint.  Rather, the only "complaint" she alleges she ever made during her employment was her March

2011 report to Forest Human Resources that after she questioned the denial of her job-share

request, her female manager allegedly "disparage[ed]" her by saying that she had a "poor

attitude" and "needed to give up her disappointment over the denial of the job share."  SAC

¶¶ 213-14.  But complaints, such as Plaintiff Eckenrode's, about alleged mistreatment not based

on discrimination because of an employee's protected status do not constitute protected activity

under Title VII as a matter of law.  *Risco v. McHugh*, 868 F. Supp. 2d 75, 110-11 (S.D.N.Y.

2012) (Ramos, J.) (collecting cases).[72]

Moreover, even assuming, *arguendo*, that Plaintiff Eckenrode's March 2011 complaint to

Human Resources did constitute "protected activity," she suffered no adverse employment action

after that time.  She alleges that (1) she requested and was denied a job-share position in or

around February or March 2011 (SAC ¶¶ 209-11); (2) after she questioned the reason for the

denial, her female manager allegedly disparaged her (*id.* ¶¶ 213); (3) she filed a complaint with

Human Resources in March 2011 about the alleged disparagement (*id.* ¶ 214); and (4) she was

promoted in August 2011 (five months after she filed her complaint).  *Id.* ¶¶ 215-18.  Her failure

to identify a single adverse employment action following her complaint to HR is fatal to her

claim.

Further, the only purported adverse action that Plaintiff Eckenrode attempts to allege is

that her manager "disparaged" her.  Even putting aside that this occurred before her complaint to

Human Resources (and, indeed, was the basis of her complaint to Human Resources), a single

alleged incident of "disparagement" cannot constitute an adverse employment action as a matter

---

[72] *See also Gourdine v. Cabrini Med. Ctr.*, 307 F.Supp.2d 587, 598 (S.D.N.Y. 2004) (Marrero, J.), *aff'd in part and vac'd in part and remanded on other grounds*, 128 F. App'x 790 (2d Cir. 2005) (explaining that "in order for an employee's complaints to be a 'protected activity' they must relate to an alleged violation of Title VII, *i.e.*, … to race or gender," and holding that plaintiff's "internal complaints that [her managers] w[ere] harassing her by criticizing her" were "not sufficiently related to a violation of Title VII to be deemed a 'protected activity'"); *Bryant v. Verizon Commc'ns, Inc.*, 550 F. Supp. 2d 513, 537 (S.D.N.Y. 2008) (McMahon, J.).

of law.  *See, e.g.*, *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) ("[P]etty

slights or minor annoyances that often take place at work" do not constitute actionable

retaliation); *Costello v. N.Y. State Nurses Ass'n*, 783 F. Supp. 2d 656, 672 (S.D.N.Y. 2011)

(Scheindlin, J.) ("reprimands," "[b]eing yelled at, receiving unfair criticism," and other

"embarrass[ing]" yet "intangible consequences" are not "materially adverse alterations of

employment conditions").  Moreover, Plaintiff Eckenrode has not alleged any harm that resulted

from the alleged retaliatory action.  *See Burlington Northern*, 548 U.S. at 67 ("The anti-

retaliation provision protects an individual not from all retaliation, but from retaliation that

produces an injury or harm.").  Quite the opposite, she admits that she was <u>promoted</u> <u>after</u> the

alleged harassment and <u>after</u> complaining to HR.  SAC ¶¶ 215-18.

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendants request that the Court issue an Order: 1)

dismissing in their entirety, with prejudice, the class and collective action claims in Counts I, II,

III and IV of the Second Amended Complaint; 2) dismissing in its entirety, with prejudice, Count

VII, concerning the two individual claims of sexual harassment by Plaintiffs Jones and Lowder;

3) dismissing in its entirety, with prejudice,  Plaintiffs Eckenrode's, Lowder's and Le's

individual claims of retaliation in Count VI; and, in the alternative, if the Court does not dismiss

the Title VII Class Counts I, II and III, striking the Class and Sub-class definitions as overbroad

in temporal scope.

Dated:   New York, New York
         April 29, 2013

Respectfully submitted,


/s/ Gary D. Friedman
Gary D. Friedman
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000
gary.friedman@weil.com

*Attorneys for Defendants Forest Pharmaceuticals,*
*Inc. and Forest Laboratories, Inc.*