```
USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 07/08/2015
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MEGAN BARRETT, LINDSEY HOUSER,
JENNIFER JONES, JENNIFER SEARD,
ERIN ECKENRODE, CHRISTY LOWDER,
JULIE SMYTH , ANDREA HARLEY,
KIMBERLY CLINTON, and MARIE
AVILA, TRACY LE, *each individually and
on behalf of a class of similarly situated
female employees*

      Plaintiffs,

    v.

FOREST LABORATORIES, INC. AND
FOREST PHARMACEUTICALS, INC.,

      Defendants.

No. 12-CV-5224 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

  Plaintiffs move for equitable tolling of the limitations period for potential collective action members' claims under the Equal Pay Act, 29 U.S.C. § 206(d). For the reasons that follow, the motion will be denied.

## BACKGROUND

  Plaintiffs are 11 current or former female employees of Defendants Forest Laboratories, Inc. and Forest Pharmaceuticals, Inc. (collectively, "Defendants" or "Forest") who bring individual and class claims under the Equal Pay Act ("EPA") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* Their claims are discussed in greater depth in the course of the Court's Opinion resolving Defendants' earlier motion to dismiss. *See Barrett v. Forest Labs., Inc.*, 39

F.Supp.3d 407 (S.D.N.Y. 2014). For present purposes, the relevant facts are limited to the actions of both sides in the course of litigating these claims.

This action was commenced on July 5, 2012, with four employees initially bringing EPA and Title VII claims against Forest. Plaintiffs served Defendants at the same time they filed their First Amended Complaint ("FAC")—fourth months later, on November 2, 2012. Six additional plaintiffs were named in the FAC, possibly as a result of Plaintiffs' counsel's efforts to publicize the litigation in the intervening period. *See, e.g.*, Decl. of Gary D. Friedman dated January 26, 2015 ("Friedman Decl."), Dkt. 74, Ex. F and O (press releases), M–N, P–Q (news articles). An initial case management conference scheduled for December 21, 2012 was adjourned indefinitely upon Plaintiffs' request (and with Defendants' consent) in anticipation of Defendants' motion to dismiss. *See* Dkt. 19. After that motion was filed on February 4, 2013, Plaintiffs sought and were granted leave to file a Second Amended Complaint ("SAC"), which they did on March 20, 2013. Defendants again moved to dismiss on April 29, 2013. Briefing was completed by June 27, 2013, oral argument held on January 16, 2014, and the motion decided on August 14, 2014. Each party sought and received extensions at various points.

On September 12, 2014, in response to the Court's direction, Plaintiffs wrote on behalf of both parties to advise that the parties had "begun the meet-and-confer process." *See* Dkt. 54. And on October 24, 2014, in a joint report in anticipation of the rescheduled initial conference, Plaintiffs first advised of their desire to seek expedited discovery of certain information and equitable tolling for the EPA claims. *See* Dkt. 56. Notably, at no point in the course of this action had the Court ordered or a party sought a stay of discovery, nor did the rules provide for one. Magistrate Judge Dolinger, to whom this case was subsequently referred for general pre-trial matters, entered a case management plan on December 11, 2014. *See* Dkt. 66. Discovery has been ongoing since.

Plaintiffs brought this motion on January 1, 2015.  They seek to toll the statute of limitations from April 29, 2013—the date on which Defendants filed their motion to dismiss the SAC—through the date conditional certification for the collective action is granted.[1]  The parties had previously agreed to toll the period between July 20, 2011 and May 31, 2012, prior to the filing of the action.  Decl. of David Sanford dated February 2, 2015 ("Sanford Decl.") ¶¶ 4–5, Dkt. 76; Decl. of Deborah Marcuse in Supp. of Cond. Cert. Mot. dated May 22, 2015, ¶ 5, Dkt. 111.  Their earlier acquiescence notwithstanding, Defendants now object to any further tolling.

## DISCUSSION

**A.   The EPA and Equitable Tolling**

Under the EPA, which incorporates various provisions of the Fair Labor Standards Act ("FLSA"), claims must be "commenced within two years after the cause of action accrued," unless the violation was "willful," in which case the period is three years.  29 U.S.C. § 255(a); *see also Moore v. Publicis Groupe SA*, No. 11-CV-1279 (ALC), 2012 WL 2574742, at *8 (S.D.N.Y. June 29, 2012) (noting that "the EPA utilizes the FLSA's enforcement mechanisms and employs its definitional provisions") (quotation omitted).  In the case of a collective action, the statute of limitations for each plaintiff runs until she opts-in to the lawsuit by filing her written consent with the court, not when the named plaintiff files her complaint.  *See* 29 U.S.C. § 256(b).  Significant

---

[1] The motion for conditional certification is now pending before Judge Dolinger.  Although such motions are almost invariably referred to as motions "certifying" a collective action, that is not strictly speaking correct.  "[W]hile courts speak of 'certifying' a [Fair Labor Standards Act] collective action, it is important to stress that the 'certification' we refer to here is only the district court's exercise of the discretionary power … to facilitate the sending of notice to potential class members." *Myers v. Hertz Corp.*, 624 F.3d 537, 555 n. 10 (2d Cir. 2010).  "[It] is neither necessary nor sufficient for the existence of a representative action under FLSA, but may be a useful case management tool for district courts to employ in appropriate cases." *Id.* (quotations omitted).

for present purposes, such signed consents from class members "do not relate back to the original filing date of the complaint." *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 199 (S.D.N.Y. 2006).

The approach under the FLSA stands in sharp contrast to the *American Pipe* doctrine applicable for Rule 23 class actions, whereby "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Giovanniello v. ALM Media, LLC*, 726 F.3d 106, 115 (2d Cir. 2013) (*quoting Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974)); *see also LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 288 (5th Cir. 1975) (describing the "fundamental, irreconcilable difference" between the FLSA's opt-in procedure and Rule 23's opt-out procedure). These divergent approaches are a result of Congress' deliberate choice in the FLSA context "to prevent the assertion of surprise claims by unnamed employees at a time when the statute of limitations would otherwise have run." *Gibbons v. Equitable Life Assur. Soc.*, 173 F.2d 337, 339 (2d Cir. 1949); *see also Grayson v. K Mart Corp.*, 79 F.3d 1086, 1106 (11th Cir. 1996) (noting legislative history of FLSA illustrating "concern that an opt-in plaintiff should not be able to escape the statute of limitations bearing on his cause of action by claiming that the limitations period was tolled by the filing of the original complaint"). Thus while Plaintiffs' bringing this action automatically tolls the claims of potential Title VII class members, *see, e.g.*, *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983), it does not do so for potential EPA collective action members.

The doctrine of equitable tolling creates an exception to the potential harshness of the FLSA's limitations regime by "allow[ing] courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances." *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996); *see also Parada v. Banco Indus. de Venezuela, C.A.*, 753 F.3d 62, 70–

71 (2d Cir. 2014) (accepting possibility of equitable tolling under FLSA). The exception, however, is exceedingly narrow. "Because statutes of limitations protect important social interests in certainty, accuracy, and repose, equitable tolling is considered a drastic remedy applicable only in rare and exceptional circumstances." *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 144 (2d Cir. 2011) (internal quotation marks, citations, and alteration omitted). Indeed, the Supreme Court has cautioned that equitable tolling is "not a cure-all for an entirely common state of affairs." *Wallace v. Kato*, 549 U.S. 384, 396 (2007).

A litigant seeking equitable tolling bears the high burden of establishing both "(1) that [s]he has been pursuing [her] rights diligently; and (2) that some extraordinary circumstance stood in [her] way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *accord Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 801 (2d Cir. 2014). In light Congress's considered choice not to relate a FLSA collective action member's signed consent back to the date of the original complaint, "courts must be cautious about equitably tolling the FLSA limitations period," *Woodard v. FedEx Freight E., Inc.*, 250 F.R.D. 178, 194 (M.D. Pa. 2008), lest they transform it into the Rule 23 scheme by effectively "alter[ing] the express terms of the statute," *Atkins v. Gen. Motors Corp.*, 701 F.2d 1124, 1130 n. 5 (5th Cir. 1983).

**B.     Equitable Tolling Is Not Appropriate in These Circumstances**

Here, Plaintiffs cannot reasonably argue that they have been diligent in pursuing their rights or that some extraordinary circumstance stood in the way of their ability to be diligent. They contend that they have been "assiduously" pursuing potential class members' rights but that they have been "forestalled" from seeking conditional certification as a result of "procedural and discovery delays" because this case has been "effectively stayed" while Defendants' motion to dismiss was pending. Pl.'s Mem. at 5–6. The record establishes otherwise. Indeed, Plaintiffs' use

of the word "effectively" is telling because the case was not, in fact, stayed, nor did either party ask the Court to do so. And while there have no doubt been delays in briefing and deciding Defendants' motion to dismiss, Plaintiffs have failed to explain how these delays erected any barrier to their seeking the discovery necessary to pursue conditional certification.

At the outset, Plaintiffs have failed to articulate any reason why they could not have at least tried to proceed with discovery during the pendency of the motion to dismiss. Indeed, that is precisely what the applicable rules assumed would happen. *See* Pilot Project Regarding Case Management Techniques for Complex Civil Cases (S.D.N.Y. October 2011) ("Local Complex Civil Rules") § II.A ("Unless the Court orders otherwise … discovery of documents, electronically stored information and tangible things may proceed under [Fed. R. Civ. P.] 34…"); Dkt. 2 (designating this action as a complex case).[2] Those rules reflect the norm that, "[e]xcept in cases covered by the Private Securities Litigation Reform Act, a motion to dismiss does not automatically stay discovery." *Brooks v. Macy's, Inc.*, No. 10-CIV-5304 (BSJ) (HBP), 2010 WL 5297756, at *1 (S.D.N.Y. Dec. 21, 2010) (collecting cases).

More broadly, the local rules are consistent with the expectation under the Federal Rules of Civil Procedure that the parties will meet on their own as soon as practicable after a case begins to hash out a proposed discovery plan. *See* Fed. R. Civ. P. 26(f)(1) ("the parties must confer as soon as practicable"); *see also* 6-26 Moore's Federal Practice – Civil § 26.143 (Lexis 2015) ("The requirement that the parties confer to develop a discovery plan may be the single most important provision in the discovery architecture of Rule 26."); Wright & Miller, 8A Federal Practice & Procedure §2051.1 (West 2015) ("The animating impulse behind the Rule 26(f) conference

---

[2] Pursuant to Standing Order M10-468, the Pilot Project was terminated on November 14, 2014. Judges may, however, continue to treat any case as complex, and this case remains designated as such.

6

requirement is that advance planning and collaboration will frequently reduce or avoid problems that would occur without that planning.")  And yet there is no dispute that Plaintiffs' counsel did not begin the meet-and-confer process until one month after the motion to dismiss was decided—and over two years after this action was commenced.[3]  *See* Friedman Decl. ¶ 24 and Ex. S.

Instead of explaining their failure to seek discovery in a timely fashion, Plaintiffs attempt to shift the blame to Defendants for not producing documents before this litigation ever began.  *See* Pl.'s Reply at 2–3.  Apparently Plaintiffs' counsel had requested certain "personnel and compensation data for all sales representatives working for Forest" on March 10, 2011, during what they describe as "the parties' pre-litigation discussions."  Sanford Decl. ¶ 6.  Similar requests were reiterated at various points in 2011, before the litigation commenced, and were refused.  *Id.* ¶¶ 7–9.  This argument is unavailing.  Defendants were under no obligation to provide any information prior to the commencement of this litigation and thus cannot be faulted for not doing what they need not have done.

Plaintiffs next argue that there is no reason to think that Defendants would have produced the necessary discovery had they sought it during the pendency of the motion to dismiss.  *See* Pl.'s Reply at 4.  That misses the point.  As already noted, at the relevant time the general rule for

---

[3] Plaintiffs do not argue that the lack of a scheduling order prevented them from pursuing discovery.  And wisely so.  As an initial matter, a district judge should not enter a scheduling order until "after receiving the parties' report under Rule 26(f)" or "consulting with the parties' attorneys … at a scheduling conference."  *See* Fed. R. Civ. P. 16(b)(1); *see also* Local Complex Civil Rules § I.  As already noted, however, Plaintiffs requested an adjournment of the initial conference scheduled by the Court for December 21, 2012 and the parties' Rule 26(f) report was only received in October 2014—well over two years after this action was commenced—at which time the case was referred to Judge Dolinger for general pre-trial matters.  He promptly scheduled an initial conference and entered a case management plan.  But even if the Court erred in failing to enter a scheduling order sooner, that failure would not absolve Plaintiffs of their responsibility to pursue discovery in a timely manner.  *See Dodson v. Runyon*, 86 F.3d 37, 41 (2d Cir. 1996) ("[A]lthough the trial judge should enter a scheduling order, *see* Fed. R. Civ. P. 16(b), the judge's failure to do so does not relieve counsel of either the right or the duty to press his client's cause.  Counsel was free to pursue discovery without a scheduling order."); *see also Lukensow v. Harley Cars*, 124 F.R.D. 64, 66 (S.D.N.Y. 1989) ("It is not the duty of the Court … to contact plaintiffs and to urge or require them to prosecute this action, nor are defendants under any duty to take any steps to bring this case to trial.").

complex civil cases in this District was that documentary discovery—which is all that Plaintiffs claim they needed, *see* Pl.'s Mem. at 3—would proceed during the pendency of a motion to dismiss. *See* Local Complex Civil Rules § II.A. More broadly, under Federal Rule of Civil Procedure 26(c), a district court may stay discovery during the pendency of a motion to dismiss only for "good cause." "It, of course, is black letter law that the mere filing of a motion to dismiss the complaint does not constitute 'good cause' for the issuance of a discovery stay." *Chesney v. Valley Stream Union Free Sch. Dist. No. 24*, 236 F.R.D. 113, 115 (E.D.N.Y. 2006). Rather, courts "must look to the particular circumstances and posture of each case." *Hong Leong Fin. Ltd. (Singapore) v. Pinnacle Performance Ltd.*, 297 F.R.D. 69, 72 (S.D.N.Y. 2013) (quotation omitted). Thus if Defendants had resisted discovery during the pendency of the motion to dismiss, Plaintiffs could have sought relief from the Court. But instead of actually seeking discovery, Plaintiffs opted for a self-imposed stay in the absence of any refusal by Defendants to produce documentation or any motion by them to stay discovery. That cannot count as diligence. And that Plaintiffs chose to litigate in this manner is all the more flummoxing because Plaintiffs knew that Defendants refused to consent to further tolling of the EPA claims.[4]

Even assuming, however, that Plaintiffs had been able to establish their diligence, their argument fares no better at the second stage of the equitable tolling inquiry. "Beyond merely being extraordinary," the circumstances warranting equitable tolling "must also be causally linked" to the inability to proceed within the statute of limitations. *Viti v. Guardian Life Ins. Co. of Am.*, No. 10-CV-2908 (ALC), 2013 WL 6500515, at *4 (S.D.N.Y. Dec. 11, 2013). Although a court's delay

---

[4] Indeed, the fact that Plaintiffs "secured Defendants' agreement to toll [the EPA claims] on multiple occasions prior to the filing of this action," Pl.'s Reply at 2, but then failed to take any steps to secure tolling *after* filing their complaint only compounds the Court's confusion with their litigation strategy. Instead of, for example, seeking discovery or proposing an agreement with Defendants to a discovery stay in exchange for tolling, Plaintiffs chose to do nothing, with full knowledge of the consequences.

8

in deciding a motion may in some circumstances amount to an "extraordinary circumstance" justifying equitable tolling, *see, e.g.*, *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012), the cases relied on by Plaintiffs are inapplicable here because the motion to dismiss did not actually present a barrier to the discovery they sought, as explained above.  In *Barghout v. Bayer Healthcare Pharmaceuticals*, by contrast, the court referred to "hard fought" motion practice "over the scope of discovery" that resulted in "delays in the discovery process" and the court's postponing discovery deadlines "on numerous occasions." No. 2:11-CV-1576, slip op. at 2 (D.N.J. May 31, 2013).  Together, the "hotly contested discovery disputes and procedural delays prolonged discovery notwithstanding Plaintiffs' diligence." *Id.* at 4.  In *Bolletino v. Cellular Sales of Knoxville, Inc.*, the court explicitly noted that the "delay became exceptional when the Defendants moved to stay the discovery in this matter." No. 3:12-CV-138, 2012 WL 3263941, at *4 (E.D. Tenn. Aug. 9, 2012).   And in *Stickle v. SCIWestern Mkt. Support Ctr., L.P.*, the court decided "not [to] ma[k]e a determination" on plaintiffs' pending motion for certification until it resolved defendants' motion to dismiss.  No. CV-08-083-PHX-MHM, 2008 WL 4446539, at *22 (D. Ariz. Sept. 30, 2008).  Thus, in each of these cases, something—whether discovery disputes, a discovery stay, or the court's election to stay a certification motion pending a motion to dismiss—prevented plaintiffs from taking steps to notify potential collection action members.  That cannot be said here.[5]

---

[5] While Plaintiffs would seek to treat the logic of cases providing for tolling during the pendency of a motion for certification of a collective action as indistinguishable from the present circumstances concerning a motion to dismiss, *see* Pl.'s Reply at 8, their argument elides a crucial distinction between the two types of motions.  In the former case, a plaintiff has done what she must to notify her fellow plaintiffs and it is the court, the defendant, or both that stand in her way.  *See, e.g., Lee*, 236 F.R.D. at 200 ("the Court directed Plaintiff after he had filed his Complaint to postpone any motions for collective or class action until after its decision regarding summary judgment"); *Yahraes v. Rest. Associates Events Corp.*, No. 10-CV-935 (SLT) (SMG), 2011 WL 844963, at *2–3 (E.D.N.Y. Mar. 8, 2011) ("[l]ess than one month after filing an amended complaint, plaintiffs filed a fully-briefed motion to certify the collective action" but defendants sought "re-briefing [of] the certification motion, seeking to defer certification in anticipation of dispositive motions, and [failed] to produce documents"); *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 170 (S.D.N.Y. 2014) (no ruling on certification although "the motion has been fully briefed for more than seven

In a final attempt to make the case for equitable tolling, Plaintiffs appeal to fairness and the interests of justice. *See* Pl.'s Reply at 8–9. It is no doubt true that the EPA "should be construed and applied so as to fulfill the underlying purposes which Congress sought to achieve," *Corning Glass Works v. Brennan*, 417 U.S. 188, 208 (1974), and that the realization of the EPA's remedial goals "depend[s] on employees receiving accurate and timely notice concerning the pendency of the collective action," *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). "But no legislation pursues its purposes at all costs," *Rodriguez v. United States*, 480 U.S. 522, 525–26 (1987), which is to say that "[e]very statute proposes, not only to achieve certain ends, but also to achieve them by particular means." *Dir., Office of Workers' Comp. Programs, Dep't of Labor v. Newport News Shipbuilding & Dry Dock Co.*, 514 U.S. 122, 136 (1995). Indeed, "[d]eciding what competing values will or will not be sacrificed to the achievement of a particular objective is the very essence of legislative choice." *Rodriguez*, 480 U.S. at 526.

In crafting the FLSA's statute of limitations, Congress could not have been clearer about what it judged to be a fair balance between the interests of employees and employers. Equitable tolling does not invite a second round of "balancing of the parties' competing interests," as Plaintiffs urge. Pl.'s Reply at 9. Rather, it provides a court with limited discretion to depart from the general rule in "rare and exceptional circumstances." *A.Q.C.*, 656 F.3d at 144. These are not such circumstances, notwithstanding the consequences of this decision for potential EPA collection action members. Indeed, to grant the exceptional remedy of equitable tolling for the

---

months"). In the latter case, that is not necessarily true because the pendency of a motion to dismiss may not prevent the plaintiff from seeking discovery or proceeding with certification, as the circumstances here illustrate. Thus to the extent *Kellgren v. Petco Animal Supplies, Inc.*, No. 13-CV-644-L (KSC), 2014 WL 2558688 (S.D. Cal. June 6, 2014) holds that a court's delay in deciding a motion to dismiss categorically constitutes an extraordinary circumstance that itself is sufficient to prevent a plaintiff from prosecuting her case, the Court respectfully declines to follow that holding.

pendency of a motion to dismiss when there was nothing standing in the way of a plaintiff's pursuing collective certification would be tantamount to tolling the statute of limitations for FLSA claims "as a matter of course for all potential plaintiffs whenever the first plaintiff files her complaint—a result plainly contrary to the procedural rules that govern FLSA collective actions." *Amendola v. Bristol-Myers Squibb Co.*, 558 F.Supp.2d 459, 480 (S.D.N.Y. 2008). And that this Court will not do.[6]

### CONCLUSION

For these reasons, Plaintiffs' motion is DENIED. The Clerk of Court is respectfully requested to close the motion pending at Dkt. 70.

SO ORDERED.

Dated: July 8, 2015
New York, New York

Ronnie Abrams
United States District Judge

---

[6] This decision does not address whether Plaintiffs may seek equitable tolling for the pendency of the motion for collective certification or any period after October 2014 if, notwithstanding their diligence, circumstances prevented them from pursuing certification. Should Plaintiffs believe equitable tolling is warranted for some such period, they should make such a request in connection with the pending certification motion.