UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------x
MEGAN BARRETT et al.,
                                    :
              Plaintiff,                  MEMORANDUM & ORDER
                                    :
         -against-                    12 cv. 5224 (RA)(MHD)
                                    :
FOREST LABORATORIES, INC.
et ano.,                            :

              Defendants.    :
-------------------------------x

MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDGE:


     This lawsuit was commenced by eleven former or current female

employees of defendants Forest Laboratories, Inc. and Forest

Pharmaceuticals, Inc. (collectively "Forest"). They assert claims

under both Title VII of the Civil Rights Act of 1964, 42 U.S.C. §

2000e et seq., and the Equal Pay Act ("EPA"), 29 U.S.C. 29 U.S.C.

§ 206(d).


     Following the denial in part of defendants' motion to dismiss

the Second Amended Complaint, Barrett v. Forest Labs., Inc., 39 F.

Supp. 3d 407 (S.D.N.Y. 2014), ten of the plaintiffs have moved for

certification of a collective action under the EPA to cover past

and current female Sales Representatives who were in the employ of

the defendants between 2009 and 2014. They also seek approval of a

1

form of notice to be sent to potential opt-in plaintiffs.

Defendants have opposed. The motion to certify is granted.

ANALYSIS

A. General Standards

The EPA was enacted as an amendment to the Fair Labor

Standards Act ("FLSA"). See, e.g., Anderson v. State Univ. of New

York, 169 F.3d 117, 119 (2d Cir. 1999), vac. on other gds., 528

U.S. 1111 (2000). It states:

> No employer . . . shall discriminate, within an
> establishment in which such employees are employed, between
> employees on the basis of sex by paying wages to employees
> . . . at a rate less than the rate at which he pays wages
> to employees of the opposite sex . . . for equal work on
> jobs the performance of which requires equal skill, effort,
> and responsibility, and which are performed under similar
> working conditions, except where such payment is made
> pursuant to (i) a seniority system; (ii) a merit system;
> (iii) a system which measures earnings by quantity or
> quality of production; or (iv) a differential based on any
> other factor other than sex. . . .

29 U.S.C. § 206(d)(1). Section 216(b) of the FLSA provides that a

suit "may be maintained against any employer . . . in any Federal

or State court . . . by any one or more employees for and in behalf

of himself or themselves and other employees similarly situated."

2

29 U.S.C. § 216(b).

Under the FLSA, "district courts 'have discretion, in appropriate cases, to implement [§ 216(b)] . . . by facilitating notice to potential plaintiffs' of the pendency of the action and of their opportunity to opt-in as represented plaintiffs." Myers v. Hertz Corp., 624 F.3d 537, 554 (2d Cir. 2010)(quoting Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 169 (1989)). The Second Circuit has endorsed the "two-step method" adopted by the district courts, under which the court first makes "an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." Id. at 554-55 (citing cases). That step may be taken if the plaintiffs make "'a modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" Id. (quoting Hoffman v. Sbarro Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997)). Following discovery, the court will, at the second stage and "on a fuller record", decide "whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs. The action may be 'de-certified' if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed with

prejudice." Id. (citing cases).

The discussion of certification in Myers concerned a dispute that centered on the question of whether the plaintiffs were exempt from protection under the FLSA. The same concept, however, has been applied to claims of liability under the EPA. Thus, the courts have consistently held that EPA plaintiffs asserting that they and fellow employees were subjected to conduct by their common employer that violated their right to equal pay under the EPA may be granted conditional certification if they make the necessary provisional demonstration that non-party employees were similarly situated with respect to an asserted violation. See, e.g., Kassman v. KPMG LLC, 2014 WL 3298884, *4-8 (S.D.N.Y. July 8, 2014); Moore v. Publicis Groupe SA, 2012 WL 2574742, *7-12 (S.D.N.Y. June 29, 2012).

As often noted, "[t]he [required] 'modest factual showing' cannot be satisfied simply by 'unsupported assertions,'. . . but it should remain a low standard of proof because the purpose of this first stage is merely to determine whether 'similarly situated' plaintiffs do in fact exist." Myers, 624 F.3d at 555 (quoting Dybach v. State of Florida Dep't of Corrections, 942 F.2d 1562, 1567 (11th Cir. 1991); Sbarro, 982 F. Supp. at 261))(emphasis in original). As elaborated by other courts, this burden is "minimal

4

. . . , in part, because 'the determination that the parties are similarly situated is merely a preliminary one' and may be modified or reversed at the second stage certification stage." <u>Lynch v. United Servs. Auto. Ass'n</u>, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007)(quoting <u>Iglesias-Mendoza v. La Belle Farm, Inc.</u>, 239 F.R.D. 363, 368 (S.D.N.Y. 2007); <u>Lee v. ABC Carpet & Home</u>, 236 F.R.D. 193, 197 (S.D.N.Y. 2006)). Thus, "[a]t this procedural stage, 'the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations.'" <u>Kassman</u>, 2014 WL 3298884 at *5 (quoting <u>Cunningham v. Elec. Data Sys. Corp.</u>, 754 F. Supp. 2d 638, 644 (S.D.N.Y. 2010)); <u>Lynch</u>, 491 F. Supp. 2d at 368 (citing <u>Barrus v. Dick's Sporting Good, Inc.</u>, 2006 WL 3373117, *4 (W.D.N.Y. Nov. 3, 2006)). "The focus . . . is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are similarly situated' . . . with respect to their allegations that the law has been violated." <u>Id.</u> at *6 (quoting <u>Young v. Cooper Cameron Corp.</u>, 229 F.R.D. 50, 54 (S.D.N.Y. 2005)). <u>Accord</u>, <u>e.g.</u>, <u>Sbarro, Inc.</u>, 982 F. Supp. at 262.

In this case plaintiffs present various forms of evidence to demonstrate provisionally that the proposed collective of opt-ins are similarly situated to them and that there is at least a colorable basis for inferring -- prior to full merits discovery --

5

that defendants have violated their rights under the EPA. They proffer their own declarations reciting the facts that they all worked for various periods of time in different regions of the country as Forest Sales Representatives -- the entry-level position for Forest marketing personnel -- that all Sales Representatives operated under the same corporate standards governing skill requirements, training, the type of work that they performed and compensation, and that, based on their "observations and experience", male Sales Representatives were paid more than female Sales Representatives. (Marcuse Decl. Exs. 1-10). Plaintiffs also proffer corporate documentation demonstrating that the Forest job description for that position, the skill sets demanded for hiring and retention, and the required training process were uniform and national. (Id. Exs. 13, 14, 15, 17 & 18). They also offer a set of documents that demonstrate that Forest had a single set of standards for initial base pay and for annual and merit raises, and that the company had a single set of procedures for determining the amount of compensation -- including a presumptive ceiling on such raises -- and a centralized system for reviewing any proposed increases that exceeded that ceiling. (Id. Exs. 16, 19, 20 & 21). They also document the fact that the company maintained a centralized set of geographically-based criteria, referred to as the COLA tiers, premised on a cost-of-living factor, to determine

6

the degree of differential in pay for the company's different geographic regions. (<u>Id.</u> Exs. 16 & 17).

As for the question of whether there is a colorable basis for alleging gender discrimination in pay, apart from the allegations to that effect in plaintiffs' declarations, plaintiffs present two principal forms of evidence designed to suggest that Forest has indeed violated the EPA. We summarize each in turn.

First, based on pre-motion production of pay records and some employment data made available by defendants, plaintiffs offer a report by their retained economist, Dr. Alexander Vekker. Dr. Vekker concludes from his regression analysis of the available data that there is a statistically significant difference between the pay of male and female Sales Representatives when controlling for a series of pertinent variables -- notably, experience at Forest (including time at Forest and time as Sales Representatives) and COLA tier (<u>id.</u> Ex. 11 at 3)[1] -- and that this holds true, to the disadvantage of the female work force, for the period from 2009 through 2014. (<u>Id.</u> Ex. 11 at 2-5 & Tables 1-2). In doing this analysis, Dr. Vekker performed two alternative assessments of the

_____

[1] Dr. Vekker's analysis also accounted for age in one of his two alternative assessments, and for year. (<u>Id.</u> Ex. 11 at 3).

7

data that differ in terms of whether to use age as a surrogate for pre-Forest work experience -- a category for which defendants were unable to supply specific data (id. Ex. 11 at 2 n.3) -- and in each case the pay differential was statistically significant in that they came in at 2.47 and 3.63 standard deviations, respectively. (Id. at 3-5). These results are both well above the threshold of 1.96 standard deviations, thus reflecting a likelihood well under 5 percent that random error accounted for the pay differential. (Id.).

Second, plaintiffs present a series of lists of comparators for each of the ten plaintiffs, with each list composed of male Sales Representatives who had less or equal seniority as compared to the plaintiff and who worked in equivalent or lower-paid COLA tiers, but who nonetheless were being paid more than the plaintiff. These ten lists each included between four and seventy-one comparators. (Tracey Decl. ¶¶ 5-6 & Exs. A-J). Plaintiffs make clear that these lists did not reflect the entire universe of potential comparators, but rather only those male comparators whose pay exceeded that of the specified plaintiff. (Id. ¶ 6).

This showing, on its face, is sufficient to justify certification of a collective. The proffer regarding corporate job

8

descriptions, required-skill summaries, required training and standardized pay rules reflects an apparent uniformity in the corporation's treatment of personnel in the Sales Representative category. (Marcuse Decl. Exs. 13-21). It similarly reflects the corporation's assumption that the work done by these individuals is sufficiently comparable that their compensation is to be guided by the same criteria across the board, limited only by their geographic region and by a very narrow area of discretion on the part of their supervisors to increase their pay. (Id.). Moreover, even this narrow exception is subject to centralized review and approval for any pay that exceeded the very low ceilings imposed nationally. (Id. at Ex. 19). Thus the plaintiffs sufficiently demonstrate, at least provisionally, that female Sales Representatives are "similarly situated" for purposes of conditional certification. See, e.g., Kassman, 2014 WL 3298884 at *6-7; Moore, 2012 WL 2574742 at *10-11.[2]

---

[2] Defendants appear to argue that the Second Circuit's recent decision in Glatt v. Fox Searchlight Pictures, 791 F.3d 376 (2d Cir. 2015), implies a more searching standard for the conditional-certification analysis of whether the members of a collective are "similarly situated", and that plaintiffs fail to meet that standard. (Def. Notice of Suppl. Auth. 2)(citing id. at 387-88). We disagree. Glatt focused on what circumstances must exist for an unpaid intern to be deemed an employee under the FLSA and therefore entitled to compensation. The Court adopted the so-called "primary beneficiary" test, which requires "a highly individualized inquiry", and it cited a "non exhaustive" list of factors that must be balanced. Id. at 383-85. It then

As for the required minimal demonstration of potential merit, we start by reiterating what other courts have said -- that for conditional certification "the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." Moore, 2012 WL 2574742 at * 9 (quoting Cunningham, 754 F. Supp. 2d at 644; Lynch, 491 F. Supp. 2d at 368). Indeed, "weighing of the merits is absolutely inappropriate." Id. (quoting Shajan v. Barolo, Ltd., 2010 WL 2218095 (S.D.N.Y. June 2, 2010)). Moreover, even if at least a peek in that direction is appropriate to inform the court's exercise of its acknowledged discretion as to whether to grant conditional certification, on that score plaintiffs again make a satisfactory proffer given the loose requirement of a "modest" or "minimal" showing. In short, plaintiffs have made such a modest

---

noted that there were significant relevant distinctions among both the plaintiffs and the various internship programs in which each plaintiff had participated; therefore, the evidence in those plaintiffs' proffer was insufficient to satisfy the commonality prong of a Rule 23 class certification. Id. at 385-86. In turning to the question of conditional certification of the FLSA collective, the Court reasoned that the plaintiffs' "common proof" did not address the questions raised by the "primary beneficiary" test, and it therefore remanded for further consideration. Id. at 388. By contrast, in this case, there is no dispute that plaintiffs are employees, and plaintiffs' evidence, showing their parallel experiences in the same job position, subject to the same corporate policies regarding hiring, starting pay scales, and performance reviews, amply addresses the question of whether they were "similarly situated".

10

showing.

The plaintiffs' own assertions of discrimination are conclusory, although the declarants make vague reference to reasons for them to have believed pre-lawsuit that they were being paid less than comparable males.[3] In substance, their repeated assertion that such discrimination has now been borne out depends for its weight on the plaintiffs' economist's review of the data supplied by defendants in initial discovery and the lists of male comparators whose pay exceeds theirs. Those twin showings suffice for present purposes.

As noted, Dr. Vekker's study yielded the conclusion -- based on two somewhat different measures of the "prior experience" variable -- that there was a statistically significant difference in pay between male and female Sales Representatives in the period from 2009 through 2014. Although the estimated differences were not

---

[3] The Second Amended Complaint ("SAC") specifies a few proposed comparators, (see, e.g., SAC ¶¶ 30, 44, 63, 106, 156, 198, 228, 263, 293, 315, 349), and defendants make much of the fact that the assumptions in that pleading that these male Sales Representatives were appropriate comparators and were being paid more than plaintiffs has not been borne out by discovery. (Def. Mem. 13). Those errors in the SAC are presumably attributable to the fact that defendants have not made available to their employees individual-specific data as to pay and other factors that would define comparability.

11

great -- ranging from 0.8% to 1.2% (Marcuse Decl. Ex. 11 at 1) --
that does not undercut the potential viability of the plaintiffs'
EPA claims. Moreover, although Dr. Vekker's methodology may, and
undoubtedly will, be challenged in later proceedings in this case,
for purposes of the modest showing demanded of plaintiffs, that
study is certainly sufficient. See, e.g., Kassman, 2014 WL 3298884
at *6 n.2; Moore, 2012 WL 2574742 at *10-11 (declining to consider
defendants' expert's critique of plaintiffs' expert statistical
analysis).[4]

       Plaintiffs' lists of comparators also add some support to
their showing of a colorable case of gender-based discrimination.

_____

       [4] We discuss below the defendants' critique of Dr. Vekker's
methodology -- a critique embodied in a report by their
economist, Dr. Michael Ward -- which focuses inter alia on the
facts (1) that Dr. Vekker did not account for the circumstance
that some employees either take leaves of absence or leave the
company's employ for a period of time and then return and (2)
that he did not include job-share employees in his study,
omissions that Dr. Ward argues distort the results of the Vekker
study. Indeed, defendant's economist suggests that if such
account is properly taken, the results show no statistically
significant differential between genders. (Friedman Decl. Ex. B
at 3-7). Needless to say, Dr. Vekker replies, arguing that Dr.
Ward's adjustments are severely gender-biased, and he
demonstrates that if the individuals who had breaks in their
employment with Forest were simply omitted from the statistical
universe, the gender differential would remain statistically
significant. (Henderson Decl. Ex. 1 at 1-2). For reasons to be
noted, we need not, and do not, resolve this battle of the
experts at present.

The lists reflect the following numbers of male comparators who earned more in the years in which each plaintiff worked at Forest, despite the male Sales Representatives having less seniority (that is, time at Forest and time as a Sales Representative) and working in a COLA region that was equivalent to, or triggered a lower salary range than, the plaintiff's region:

| Plaintiff | Years | # of Comparators |
|-----------|-------|------------------|
| Marie Avila | 2010 | 4 |
| Megan Barrett | 2009 | 65 |
| | 2010 | 70 |
| Kimberly Clinton | 2011 | 4 |
| Erin Eckenrode | 2009 | 63 |
| | 2010 | 62 |
| Andrea Harley | 2011 | 19 |
| | 2012 | 51 |
| Lindsey Houser | 2009 | 17 |
| Jennifer Jones | 2009 | 34 |
| Tracy Le | 2012 | 10 |
| | 2013 | 20 |
| Julie Smyth | 2010 | 14 |
| | 2011 | 12 |
| Jennifer Seard | 2010 | 31 |

(Tracey Decl. Exs. A-J).

In opposition, defendants proffer a series of declarations by Forest supervisors and an economist's report, all of which are designed to demonstrate (1) that the female Sales Representatives are not "similarly situated" for purposes of conditional certification of a collective action and (2) that plaintiffs cannot demonstrate a gender-based disparity in pay. (Bair, Devennie, Turner, Ragins & Lynch Decls.). Defendants also press an argument that plaintiffs will be unable to satisfy the "establishment" requirement of the EPA. (Defts' Mem. 18-19).

These arguments fail for several reasons. First, and most fundamentally, "'defendant[s'] attacks on plaintiffs' . . . evidence are premature at the notice stage.'" Kassman, 2014 WL 3298884 at *6 n.2 (quoting In re Penthouse Exec. Club Compensation Litig., 2010 WL 4340255, *2 (S.D.N.Y. Oct. 27, 2010)); Moore, 2012 WL 2574742 at *9, 11. As numerous courts have observed, "arguments about credibility or the weight of the evidence . . . are out of place in a conditional certification motion." Spencer v. No Parking Today, Inc., 2013 WL 1040052, *5 n.16 (S.D.N.Y. March 15, 2013)(citing Limarvin v. Edo Rest. Corp., 2013 WL 371571, *1 (S.D.N.Y. Jan. 31, 2013); Kalloo v. Unlimited Mech. Co. of NY, 908 F. Supp. 2d 344, 347 (E.D.N.Y. 2012); Morris v. Lettire Const., Corp., 896 F. Supp. 2d 265, 269 (S.D.N.Y. 2012)). Accord, e.g.,

14

Kassman, 2014 WL 3298884 at *6 n.2; Moore, 2012 WL 2574742 at *9 (citing cases) & *11 ("Defendants' arguments are more appropriate after discovery is finished. Then, Defendants can attack the validity of Plaintiffs' assertions and the Court will be in a better position to determine whether all class members are indeed similarly situated.").

Even if we look at the substance of defendants' proffer, it fails to undercut the adequacy of plaintiffs' showing for provisional certification. The declarations proffered by defendants are authored by three Division Managers, the Executive Director of Sales Planning and Analytics, and the Senior Vice President, Sales, and are designed to show, inter alia, (1) that Sales Representatives have somewhat different required skills depending on whether they are working in an urban setting or a suburban or rural location -- for example, in rural areas the Sales Representative must travel great distances (Bair Decl. ¶ 5; Devennie Decl. ¶ 7; Turner Decl. ¶¶ 7-8) -- and depending as well on such circumstances as whether they are located near certain major hospital centers (Bair Decl. ¶ 9; Devennie Decl. ¶ 11; Turner Decl. ¶ 12), the demographics of the patient population in their regions (Bair Decl. ¶ 6; Devennie Decl. ¶ 8; Turner Decl. ¶ 9), and the density of pharmacies in their regions (Bair Decl. ¶ 10;

Devennie Decl. ¶ 12; Turner Decl. ¶ 13)[5] and (2) that decisions as to pay increases embody a subjective element in evaluating the Sales Representative. (Bair Decl. ¶¶ 11-12; Devennie Decl. ¶¶ 13-14; Turner Decl. ¶¶ 14-15). In addition, the three declarant Division Managers -- who each supervise about ten Sales Representatives, including one or two of the plaintiffs -- report that they themselves have approved salaries for those plaintiffs that compare favorably with the salaries of most or all of the male Sales Representatives on their respective teams. (Bair Decl. ¶¶ 13-15; Devennie Decl. ¶¶ 15-22; Turner Decl. ¶¶ 16-22).

The arguments derived from these proffers are wholly inadequate to show that the proposed opt-in plaintiffs are not similarly situated in terms of skill, effort and responsibility. The provisional justification for a proposed collective -- and indeed the outcome of EPA litigation -- does not depend upon whether all of the employees work in precisely the same fashion, like workers on an assembly line. See, e.g., Lavin-McEnerey v. Marist College, 239 F.3d 476, 480 (2d Cir. 2001)("plaintiff need not demonstrate that her job is identical to a higher paid

---

[5] These declarants also note that the Sales Representatives will vary in terms of which Forest products they should emphasize. (Bair Decl. ¶¶ 7-8; Devennie Decl. ¶ 10; Turner Decl. ¶ 9, 11).

position, but only must show that the two positions are 'substantially equal' in skill, effort, and responsibility.")(citing Tomka v. Seiler, 66 F.3d 1295, 1310 (2d Cir. 1995)); Kassman, 2014 WL 3298884 at *6 (opt-ins can have "different job functions")(citing Diaz v. S & H Bondi's Dep't Store, 2012 WL 137460, *6 (S.D.N.Y. Jan. 18, 2012)). Indeed, the burden to satisfy the "similarly situated" requirement is quite low. Moore, 2010 WL 2574742 at *9 (citing inter alia Raniere v. Citigroup Inc., 827 F. Supp. 2d 294, 319 (S.D.N.Y. 2011)). Thus, a showing that the employees "had similar responsibilities" and "performed substantially the same work", and did so "under similar working conditions" is sufficient. Id. at *10. Accord Cunningham, 754 F. Supp. 2d at 651; see also Belfi v. Prendergast, 191 F.3d 129, 135 (2d Cir. 1999). Plaintiffs have made that demonstration, and the declarations by defendants do not undercut that showing. Moreover, defendants' assertion that different skills are required depending on the demographic and/or geographic circumstances of a specific location is inconsistent with the documentation in the record reflecting that the company's stated job description for the position of Sales Representative and its specification of the required skills for that position do not make any distinction based on the demographic or geographic circumstances. (Marcuse Decl. Exs.

13-14, 17).[6]

As for the fact that the defendants' formula for pay decisions embodies a subjective, as well as an objective, element, that fact -- which is presumably found in many, if not most, pay plans -- does not by itself preclude EPA liability. See, e.g., Earl v. Norfolk State Univ., 2014 WL 6608769, *6 (E.D. Va. Nov. 18, 2014)(university evaluated teachers based on "teaching, research, professional development and service, university service, and community service"). The statute specifies certain potential justifications for pay differentials, even if those differentials are found to predominate in favor of one gender, but the factual basis for these justifications -- which are "narrowly construed, Ryduchowski v. Port Auth. Of New York & New Jersey, 203 F.3d 135, 143 (2d Cir. 2000)(quoting EEOC v. Aetna Ins. Co., 616 F.2d 719, 724 (4th Cir. 1980)) -- must be established by the defendant's presentation of concrete evidence, see, e.g., Jamilik v. Yale Univ., 362 F. App'x. 148, 149 (2d Cir. 2009); Belfi, 191 F.3d at 136; Bronzini v. Classic Sec. LLC, 2009 WL 102140, *7 (S.D.N.Y. Jan. 15, 2009), and is not amenable to disposition on a

_____

[6] Defendants' showing does not meaningfully suggest any difference among Sales Representatives in effort or responsibility.

provisional-certification motion. In any event, the mere inclusion in a pay formula of a subjective component obviously does not demonstrate the applicability of any of the statutory justifications for pay disparities, and defendants have offered no evidence on the current motion to justify any pay disparity in favor of a male comparator. In short, this issue must be addressed either on summary judgment or at trial.

As for defendants' proffer of their expert's critique of Dr. Vekker's study and Dr. Ward's revision of that study, it too fails to demonstrate that there is no basis for the statistical inference of impermissible deviation in pay by gender. As noted, the courts will not undertake an assessment of a defendant's challenge to the bona fides of the plaintiffs' statistical case at this stage. E.g., Kassman, 2014 WL 3298884 at *6 n.2; Moore, 2012 WL 2574742 at *10-11. That is an issue to be deal with on a Daubert or summary-judgment motion, or at trial. For our current purpose, it suffices to note that Dr. Vekker provides a rebuttal report in which he observes that the amendments to his variables utilized by Dr. Ward are all heavily weighted to minimize the observed pay disparities between genders, since it is females who predominantly are the ones who take a leave of absence or depart from the job temporarily or undertake shared work with another employee. (Henderson Decl. Ex.

19

1 at 1). He further notes that if these anomalous employees are dropped from the statistical universe, the divergence between pay for male and female Sales Representatives during the relevant period remains statistically significant. (<u>Id.</u> Ex. 1 at 1-2 & Table 1). Again, the validity of the two competing approaches to defining the variables in a regression analysis and in specifying the universe of comparable employees is an issue that is not appropriately addressed here.

Defendants' attack on the plaintiffs' list of comparators also does not save their position. The significance of the plaintiffs' comparator data is arguably somewhat diluted by the conceded fact that plaintiffs listed only male comparators who were paid more than the plaintiffs -- apparently a minority of comparators. Indeed, defendants seek to rebut this showing by asserting that the vast majority of male comparators earned the same as, or less than, the plaintiffs, and they accuse plaintiffs of "cherry picking" among comparators. (Friedman Decl. Ex. B at 7-8; Defts' Mem. 14). Nonetheless, this aspect of plaintiffs' proffer cannot be so easily dismissed. Under the EPA, male employees who perform substantially the same tasks as a female employee and have less seniority should presumptively be paid less, rather than more, than the female

employee.[7] The fact that numbers of such male Sales Representatives (that is, males who have less seniority than the female and are not in a COLA that would itself justify higher pay for the male) are shown to have been paid more than their female equivalents at least raises a question as to whether these disparities are inconsistent with the statutory mandate, and defendants would bear the burden of justification for such disparities. See, e.g., Lavin-McEleney, 239 F.3d at 480 (affirming judgment for female assistant professor who earned less than one male comparator even though second comparator -- a female -- earned more than the male).

In this regard, it bears emphasis that even if many or most male comparators were not favored in pay compared to plaintiffs, that does not by itself absolve the employer. A plaintiff need only establish that one comparator was improperly favored in pay to make her showing at this stage. See, e.g., id.. See also E.E.O.C. v. White & Son Enterprises, 881 F.2d 1006, 1009 (11th Cir. 1989).[8]

---

[7] As noted, the statute affords the employer various affirmative defenses keyed to specific justifications for such a pay differential. See, e.g., Belfi, 191 F.3d at 136.

[8] We note also that even if most male comparators are not so favored -- a circumstance that might undercut a contention that such gender discrimination as has been shown was intentional -- that would not bar the claim since the plaintiff need not show intent in order to prevail on an EPA claim. See, e.g., Pollis v. New Sch. for Soc. Research, 132 F.3d 115, 119 (2d Cir. 1997)

In short, there may well be an explanation for the higher pay given to the comparators listed by plaintiffs, but that justification remains to be supplied. Once again, that will be an issue for summary judgment or trial.

We note as well that at one point defendants seem to question the viability of the plaintiffs' case because the pay differential determined by Dr. Vekker was quite modest, at least by comparison with other cases. (Defts' Mem. 11 & n.17). Defendants, however, proffer no legal authority for the implicit notion that the EPA does not protect female employees from very modest deviations in pay by gender. We are also aware of no such rule. Ultimately, if the difference in pay was small, so would be the damage award.[9]

Finally, defendants argue that plaintiffs cannot satisfy the requirement of the statute that the discrimination have occurred within "an establishment" (Def. Mem. 18-19), a term generally

---

(citing Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 126 n.19 (1985)).

[9] Defendants suggest in their brief that Dr. Vekker had not accounted for the value of employees' compensation other than base pay. (Def. Mem. at 22). However, defendants do not calculate the effect of the addition of benefits to compensation in this case nor do they offer any legal authority compelling EPA plaintiffs to do such a calculation.

treated -- at least in certain contexts -- as encompassing a singular "physical place of business", for example a factory or an office building. See, e.g., 29 C.F.R. § 779.23 ("As used in the [Fair Labor Standards] Act, the term establishment, which is not specially defined therein, refers to a 'distinct physical place of business' rather than to 'an entire business or enterprise' which may include several separate places of business. . . . As appears more fully elsewhere in this part, this is the meaning of the term as used in sections 3(r), 3(s), 6(d), 7(i), 13(a), 13(b), and 14 of the Act."); 29 C.F.R. § 779.303. Since the plaintiffs define the collective to cover all female Sales Representatives nationally, defendants contend that the proposed collective should be deemed a non-starter.

The general approach of the cases has been to decline to determine at the conditional-certification stage whether the plaintiffs will be able to satisfy the "establishment" requirement. See, e.g., Kassman, 2014 WL 3298884 at *8; Moore, 2012 WL 2574742 at *11 (citing cases). Indeed, the courts have typically approved certification for multi-state or national collectives without even addressing the "establishment" question. See, e.g., Flood v. Carlson Rest. Inc., 2015 WL 260436, *4 (S.D.N.Y. Jan. 20, 2015)(citing cases).

Moreover, it is not at all clear that, in this specific context, the term "establishment" is properly applied in the manner advocated by defendants.[10] Indeed, that question appears to call for a fact-intensive assessment. The pertinent Labor Department regulation defining "establishment" within the context of the EPA does state that the word "refers to a distinct physical place of business rather than to an entire business or 'enterprise' which may include several separate places of business. Accordingly, each physically separate place of business is **ordinarily** considered a separate establishment." 29 C.F.R. § 1620(9)(a)(emphasis supplied). The regulation goes on, however, to observe that "unusual circumstances may call for two or more distinct physical portions of a business enterprise being treated as a single establishment. For example, a central administrative unit may hire all employees, set wages, and assign the location of employment; employees may

---

[10] We note that the recent decision of the Second Circuit in <u>Chen v. Major League Baseball Properties</u>, __ F.3d __, 2015 WL 4772359, *5-8 (2d Cir. Aug. 14, 2015), in adopting a Department of Labor definition of the term ("a distinct physical place of business"), explicitly did so in the context of a specific exemption in the FLSA, <u>see Chen</u>, 2015 WL 4772359 at *5 (relying on 29 C.F.R. §§ 779.23 & .303, which define the term for purposes of section 13(a)(3), 29 U.S.C. § 213(a)(3)), and the Court carefully warned that the definition may vary depending on which provision of the FLSA was at issue. <u>Id.</u> at n.7 ("we by no means foreclose the possibility that an alternative definition of establishment may arise under another provision of the FLSA or different factual scenario.").

frequently interchange work locations; and daily duties may be virtually identical and performed under similar working conditions." Id. § 1620.(9)(b).[11] Where there is evidence, for example, "that job responsibilities were generally the same across offices, compensation policies were firm-wide and ultimate compensation decisions were made by centralized leadership", requested conditional certification will not be denied based on the invocation of the "establishment" requirement. Kassman, 2014 WL 3298884 at *8. Cf. Mullhall v. Advance Sec., Inc., 19 F.3d 586, 591 (11th Cir. 1994); Brennan v. Goose Creek Ind. School Dist., 519 F.2d 53 (5th Cir. 1975).

Plaintiffs have certainly made a sufficient proffer to demonstrate in general terms that they have a colorable basis for satisfying these standards. Moreover, in the current context -- in which it appears that Sales Representatives spend much or most of their work time on the road and not in any "physical place of business", as they all perform the same type of work under centralized controls -- there is still further reason to be skeptical that the "physical place of business" definition of

---

[11] The regulation does not specify whether all or some or only one of these listed circumstances must be found in order to deem multiple locations to be part of one establishment.

"establishment" will govern here.[12]

In short, the defendants' effort to block certification on this basis is misguided. Whether plaintiffs ultimately will be able to meet this requirement is a matter to be determined at the summary-judgment stage or at trial.

The Form of Notice

Plaintiffs have proffered a form of notice that they invite the court to adopt. Before we act on that request, we direct counsel on both sides to consult and make reasonable efforts to arrive at an agreed-upon form. This process is to be completed within seven days. Failing agreement, the parties are to submit their competing versions with a written explanation for their differences. Those submissions, if needed, will be due within ten

_____

[12] It also bears noting that the courts that have looked to the "establishment" issue have held that even if separate physical edifices amount to separate establishments, plaintiffs who are working in different buildings may sue collectively if they contend that they are discriminated against vis-a-vis employees within their respective buildings based on a policy or practice that the company applies across different "establishments. See, e.g., Kassman, 2014 WL 3298884 at *8; Rehwaldt v. Elec. Data Sys. Corp., 1996 WL 947568, *6-7 (W.D.N.Y. Mar. 28, 1996). See also Mulhall, 19 F.3d at 591; Brennan, 519 F.2d at 56.

business days from the issuance of this memorandum and order.


CONCLUSION


Plaintiffs' motion to conditionally certify a collective action is granted.


**Dated: New York, New York**
**September 2, 2015**

**SO ORDERED.**


_____
**MICHAEL H. DOLINGER**
**UNITED STATES MAGISTRATE JUDGE**

27